No. 46,783

Alliance Mutual Casualty Company, *Appellant*, v. Hartford Accident & Indemnity Company; Farm Bureau Mutual Insurance Company and Deborah Reif, *Appellees.*

(504 P. 2d 161)

Opinion filed December 9, 1972.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for appellant.

*Jerry Ward,* of Hampton & Ward, of Great Bend, argued the cause and was on the brief for appellee Hartford Accident & Indemnity Company.

*Kenneth L. Kerns,* of Great Bend, argued the cause, and *Warren H. Kopke,* of Great Bend, was with him on the brief for appellee Farm Bureau Mutual Insurance Company.

*Dan E. Turner,* of Turner & Balloun, Chartered, of Great Bend, argued the cause and was on the brief for appellee Deborah Reif.

The opinion of the court was delivered by

Fatzer, C. J.: This action was commenced by the appellant, Alliance Mutual Casualty Company (Alliance), for declaratory

judgment to determine the rights and liabilities of various parties by reason of insurance policies issued. At issue is the question of coverage under the "omnibus clause" of a family automobile insurance policy issued by Alliance to Jack W. Seamens, which was in full force and effect on December 4, 1967. The policy was on a 1960 Lincoln Continental four-door automobile which was titled in the name of Jack W. Seamens and provided insurance coverage against bodily injury liability to third persons.

The facts are not in material dispute. On December 4, 1967, Deborah Reif, appellee herein, was an occupant in an automobile insured by Farm Bureau Mutual Insurance Company (Farm Bureau), also an appellee herein, when the automobile in which she was riding was hit from behind by the 1960 Lincoln Continental being driven by one Leroy Richard Harrison, Jr. (Harrison). Thereafter, an action was commenced in the Barton district court by Deborah Reif against Harrison to recover damages for injuries arising out of the collision. On January 26, 1970, judgment was granted in favor of Deborah Reif and against Harrison in the amount of $13,000. Alliance refused to defend Harrison in the personal injury action.

Subsequently, demand was made upon Harrison in behalf of Deborah Reif for satisfaction of the judgment. In an effort to determine the rights and responsibilities of the various parties, Alliance commenced this action in the Barton district court seeking declaratory relief and immunity from the judgment rendered in favor of Deborah Reif. The appellee Hartford Accident and Indemnity Company (Hartford) was joined as a party by virtue of a policy of insurance extending coverage to Harrison's stepfather—the named insured being Dean E. Wilson, d/b/a L. & W. Well Servicing Company. The appellee Farm Bureau was joined as a party defendant by virtue of the uninsured motorist coverage on the automobile in which Deborah Reif was an occupant at the time of the collision. Alliance contended in the district court it was under no obligation to extend liability coverage to Harrison, it being alleged the Continental was not being operated with the permission of the named insured, Jack W. Seamens. That allegation framed the primary issue before the district court, the question being whether liability protection was afforded to Harrison under the facts and circumstances hereafter detailed by virtue of Alliance's policy issued to Jack W. Seamens. The "omnibus clause" of Alliance's policy reads in pertinent part:

"Persons Insured. The following are insureds under Part 1:

"(a) with respect to the owned automobile,

"(1) the named insured and any resident of the same household,

"(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission and

"(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (2) above;"

The evidence clearly established that Harrison was operating the Continental at the time of the accident with the express permission of George Seamens, the son of the named insured, Jack W. Seamens. The evidence further disclosed that while the Continental was titled in the father's name, it had actually been purchased by George Seamens—the father purchased the automobile and the son reimbursed him in full. George referred to the Continental as his own automobile, and he was responsible for the normal maintenance of the car, his father expecting him to pay for such items as gas, oil and tire repair. In addition, George had free access to the use of the vehicle and his father knew that he referred to the vehicle as his own automobile, his father having placed no restrictions upon him as to where or when the automobile could be driven. The insurance coverage afforded by Alliance was actually purchased and kept current by the son since George reimbursed his father for the premiums of insurance. · In short, the record shows George had complete dominion and control over the Continental.

George had possession of the car for his use while he was attending college at Fort Hays State. The record shows the father denied ever giving express permission to his son to allow persons other than family members to operate the vehicle; in fact, the father had forbidden his son from authorizing others to operate the car prior to George's going away to college. That Jack Seamens had given no express permission to Harrison to operate the Continental was corroborated by George, and both Harrison and Jack Seamens testified they had never met, let alone discussed the operation of the car before the accident.

While at college, George discussed the possibility of Harrison purchasing the car. George testified that a Continental Mark V "was not too much of a kids car," and he wanted to sell it so that he could buy something "sporty." One night while double dating, Harrison commented he liked the car and George offered to sell

it for $800. George stated he let Harrison use the car the day of the accident because he thought Harrison wanted to buy it, and further testified Harrison had indicated a willingness to purchase but needed to get his stepfather's approval. George testified Harrison had told him the day the car was loaned that he had called his stepfather and talked to him about buying the Continental. Harrison said his stepfather felt it was a good deal but wanted Harrison to drive it home for an inspection. George also testified he let Harrison drive the car to see if it was a good car, and in his deposition, he stated, "who is going to buy a car that hasn't driven it." The record shows George had discussed selling the car with his father, and he testified he felt he had his father's permission to sell the car. He stated he assumed he had his father's permission to arrange a sale of the Continental.

In any event, Harrison was given express permission by George to drive the car. Before the car was loaned, George did not indicate the existence of any restriction on the use of the automobile as to himself, nor did he place any restriction on Harrison's use of the Continental. On the way to Hoisington to attend a funeral and to show the Continental to his stepfather, Harrison wrecked the car in a collision with the automobile in which Deborah Reif was a passenger.

The action was tried by the court upon stipulations, admissions of the parties, and depositions, along with briefs submitted by the parties. In a memorandum decision the district court made extensive findings of fact which are summarized: That the money which was used to purchase the Continental was George's money; that George had actual possession and control of the automobile even though it had been titled in the father's name; that George was responsible for the maintenance of the car; that George referred to the Continental as his car and his father had placed no restrictions upon his use of the vehicle; that George and Harrison had discussed the sale of the vehicle and on the day of the accident George had such an interest in the vehicle that he could grant permission for its use; that George gave Harrison "express" permission to use the vehicle and Harrison believed the car belonged to George, and that no restriction was placed on the permission given Harrison for his use of the vehicle. In harmony with its findings, the district court concluded George Seamens was the "owner in fact" under the evidence and had such an interest in

the vehicle that he had the legal right to give permission to Harrison to use the Continental. Judgment was entered by the district court that coverage was afforded to Harrison under Alliance's policy of insurance issued to Jack Seamens.

We are of the opinion the judgment of the district court was correct although the court relied upon a wrong ground and assigned an erroneous reason for its decision. (*Pierce v. Board of County Commissioners*, 200 Kan. 74, 81, 434 P. 2d 858, and cases cited therein.)

The single question controlling this lawsuit is whether the Continental was being driven with the permission of Jack W. Seamens. This court follows the general rule that the permission referred to in the omnibus clause may be express or implied. It may be established by a showing of a course of conduct or relationship between the parties, which signifies acquiescence or consent of the insured. In addition, this court starts with the premise that an "omnibus clause" for reasons of public policy, is to be liberally construed. (*Gibbs v. Central Surety & Ins. Corp.*, 163 Kan. 252, 260, *181* P. 2d 498; *National Farmers Union Property & Cas. Co. v. Farm Bureau Mutual Ins. Co.*, 194 Kan. 93, 397 P. 2d 81; *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P. 2d 931.)

It is unnecessary to discuss and distinguish the many cases cited by the parties in their briefs. It is sufficient to say the court is of the opinion that, under the facts and circumstances as disclosed by the record and the findings of the district court, George had express and Harrison had implied permission of the named insured to drive the Continental and that such use was covered by the omnibus clause of Alliance's policy. No other conclusion may be drawn from the evidence than that if Jack Seamens did not expressly authorize George to permit Harrison to drive the Continental, he impliedly permitted Harrison to do so. George had absolute control and unfettered dominion of the automobile. He had discussed the possibility of selling the car with his father and the record shows George assumed his father had given approval to a sale if the price was right. The clear inference is that George could not arrange a sale without permitting Harrison to operate the automobile. Jack Seamens did not challenge the question of coverage until subsequent to the original judgment against Harrison when he received the summons in the case at bar. Moreover, the record shows that while

Alliance denied coverage to Harrison, it partially paid the costs to repair the Continental. The facts and circumstances show Jack Seamens relaxed his prohibition to George insofar as the sale of the auto was concerned. The car was loaned upon the belief that a sale could be consummated, and it follows that Harrison was operating the car with the implied permission of the named insured.

We have serious doubts that the named insured's admonition to George was intended to restrict the scope of coverage afforded by Alliance. A named insured, untutored in law and fearful that his consent might lead to his own liability for damages in excess of policy limitations, may well be tempered to invent a claim that he prohibited others to drive the vehicle, or to convert a precatory request into a binding prohibition. We may add that the fear of insurance policy cancellation might well have the same effect.

The insurance protection of the public, as well as the protection of all persons operating motor vehicles in this state, requires that the matter of coverage not be determined after an accident and controlled by a named insured's sometimes discretionary recollections of private verbal admonitions given before an accident. The public interest requires the surrounding course of events be examined in a realistic manner. Courts, as well as the public interest, should not be controlled in situations of this type by verbal instructions that are actually unenforced and ofttimes ignored admonitions of an advisory character. (*Standard Accident Ins. Co. v. Allstate Ins. Co.*, 72 N. J. Super. 402, 178 A. 2d 358; *Odolecki v. Hartford Accident & Indemnity Co.* 55 N. J. 542, 264 A. 2d 38; *Allstate Insurance Co. v. Nationwide Mut. Ins. Co.*, 273 A. 2d 261 [Del. Super.]; Anno: Omnibus Clause—Consent, 4 A. L. R. 3d 10.)

In *Cascade Ins. Co. v. Glacier Ins. Co.*, 156 Mont. 236, 479 P. 2d 259, it was said:

"In the instant case our facts reveal a contract of insurance, drawn by the insurance company, the terms of which are so fluid that it vests the insured with the authority to determine who shall be the beneficiary of the contract. It requires no notice or that any other condition be met. It can be extended to any number of persons at any time without any advance in price or consideration. The election to confer or withhold the benefit can be made orally after the occurrence of the accident; therefore, increased risk or expanded exposure could not be a factor for consideration. Rather, public policy would demand that only those the insured knowingly wished to exclude would be denied benefits, viewed at the time any restriction is placed on the use.

"Under our fact situation, it is highly questionable that there was an intention by the insured to deny insurance benefits as opposed to the protection

and conservation of a valued asset at the time the instructions were given not to loan the automobile, any more than it could be reasonably assumed that the insured would intend to withhold benefits from the first permittee, Pat Roark, if he were prohibited the use of the automobile for 30 days for disciplinary purposes and this prohibition was violated and an accident occurred." (p. 244.)

The use to which George put the Continental in the loan to Harrison was to enable him to drive it home so that his stepfather could make an inspection of the automobile. That use was a reasonable foreseeable one to be anticipated by Jack Seamens. Considering the family relationship between the named insured and George, together with the unfettered dominion and control over the automobile while George was attending college away from home, as well as the uncontroverted facts that George purchased the automobile with his own money and reimbursed his father for the insurance premiums, it necessarily follows the named insured clothed George with ostensible, if not actual, authority to engage in the simple transaction of permitting Harrison to operate the automobile for purposes of consummating a sale. This is particularly true when it was not shown that any claimed restrictions as to George's use were within the knowledge of Harrison, nor were any restrictions placed upon Harrison's use of the vehicle. In short, the facts and circumstances compel the conclusion the named insured impliedly permitted Harrison to use the automobile, rendering Alliance liable under its omnibus clause coverage.

The judgment is affirmed.

FROMME, J., dissenting: I cannot agree with the majority opinion which invests this court with authority not only to delete provisions in a contract of insurance but also to determine the ultimate facts in the lawsuit.

The "named insured" in the present policy was Jack W. Seamens. With respect to liability coverage he alone was invested with authority under the omnibus provisions of the policy to grant or withhold permission to operate the automobile. Other persons insured, such as residents of the household of the named insured, are not invested with such authority·to extend coverage to strangers. The named insured, Jack W. Seamens, testified: ". . . I told him that he could not loan it [the car] to anybody or it would be brought home." He further testified: "No one had permission to drive this car and no one would have ever had permission to drive

this car. I know what the liability is against a person that doesn't have permission. If I ever found anybody driving that car it would have been brought home, period. I definitely gave no one permission to drive this car except my son, or except my family and I have three other children."

With the foregoing evidence it becomes very difficult to imply permission from Jack W. Seamens to Harrison to operate the car. The effect of this court's decision is to delete the requirement in the contract of insurance that permission to operate be granted or implied by words or acts of the named insured. Under the court's present opinion any member of the named insured's household now has authority to extend permission to operate the car which will be binding upon the insurer.

I question the wisdom of rewriting such a policy contract in the present case. The statements as to liberal construction based upon public policy seem entirely misplaced. Harrison was an uninsured motorist and liability for his negligence was covered by the policy issued by Farm Bureau Insurance Company on the vehicle in which Deborah Reif was riding. This is a contest between insurance companies as to who insured the loss. What question of public policy should be recognized in favor of one as against the other company?

In *Burks v. Whalen,* 208 Kan. 222, 491 P. 2d 940, the question of implied permission in the omnibus provision of an insurance policy was considered and this court said:

". . . It seems to us that implied permission is a question of ultimate fact. Like negligence, it becomes a question of law only when reasonable minds could not reach different conclusions. We think this is the sense in which trial court found that 'as a matter of law' the facts and circumstances did not constitute implied permission—no implication of permission was *compelled* by the evidence. Our chore, then, is to determine whether there was substantial evidence which, given the benefit of all reasonable inferences, would support the trial court's finding of 'no implied permission.'" (p. 224.)

After examining the record this court went on to say:

"This evidence, in our view, amply justifies the finding of the trial court that the pattern of prior conduct did not show implied consent. Certainly we cannot say it compelled the contrary finding." (p. 225.)

From the authority cited there can be no doubt in the present case that implied permission was a question of fact for the trier of the facts. This court is not invested with that authority.

The trial court did not determine whether the named insured

gave Harrison implied permission to drive the car and neither should this court on appeal do so.

The trial court erroneously based its decision not on the insurance contract provisions but on who had paid for the car and the insurance contract. The basis, if any, for the trial court's decision was expressed in its memorandum decision as follows:

"This Court does not believe a giant corporate insurance company can or should be permitted to issue a policy covering a certain vehicle, collect premium dollars on such coverage for the vehicle, then be permitted to deny coverage when such vehicle is involved in an accident, such denial being based on the fact that the title owner did not give permission for the use of the car."

Such reasoning, if sound, would be equally applicable to the company which issued the uninsured motorist coverage on the Reif vehicle. I would reverse the decision of the trial court and remand the case to the trial court for further proceedings.

FONTRON, J., joins in the foregoing dissent.