(573 P.2d 1106)
No. 48,983

UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, *Appellee*, v. CONTINENTAL INSURANCE COMPANY, a Corporation, *Appellant*.

Opinion filed December 16, 1977.

*Christopher Randall* of Turner, Hensley and Boisseau, Chartered, of Great Bend, for the appellant.

*Edward Larson* of Jeter and Larson, of Hays, for the appellee.

Before HARMAN, C.J., ABBOTT and SPENCER, JJ.

SPENCER, J.: This action was brought to determine whether appellee's insured, Stanley Pfannenstiel, as a second permittee, was a permissive user under the omnibus clause of an automobile liability insurance policy issued to Clarence J. Rohr by appellant.

No substantial dispute exists as to the facts of this case, which were found by the trial court to be as follows:

"  . . .  On July 14, 1972, Gary L. Rohr, a fifteen-year-old boy with a restricted driver's license, and his father, Clarence J. Rohr, purchased a 1965 Mustang. The car was to be Gary's car for use in going to and from school and most of the money for the purchase price came from Gary's savings. Title was taken in the name of both Gary Rohr and Clarence Rohr and Clarence Rohr provided the insurance with the defendant herein, Continental Insurance Company.

"That evening Gary Rohr was given permission by his father, Clarence Rohr, to drive the car from the Rohr farm home to the nearby Younger farm to show the car to the Younger boys who were friends of Gary's. According to the testimony of both Gary Rohr and Clarence Rohr, Gary was instructed by his father, Clarence, not to go further than the Younger farm, not to take the car on a paved highway, and in no event to allow any other person to drive the automobile.

"Gary drove the car to the Younger farm home, but found the Youngers not at home, and disregarding his father's instructions, drove on to Munjor to show his car to his friend Stanley Pfannenstiel. Stanley Pfannenstiel and Gary Rohr then decided to drive the car to Hays, Kansas. They drove north out of Munjor until they reached the blacktop of U.S. Highway 40. At this point they switched drivers, with Stanley Pfannenstiel becoming the driver of Gary's new car, out of concern for a violation of the restrictions on Gary's restricted driver's license if he drove into the city of 'Hays. Stanley Pfannenstiel was older and had a regular, unrestricted driver's license.

"It is not entirely clear which boy suggested the switch. On one prior occasion, when his parents were out of town, Gary permitted Stanley to drive his father's pick-up and Gary had gotten in some trouble with his father over this. Stanley Pfannenstiel knew of the trouble.

"After the boys turned west and proceeded on old Highway 40 towards Hays, they had an accident with a motorcycle driven by Larry Morris causing substantial personal injury to Larry Morris. Morris filed a lawsuit against Stanley Pfannenstiel, Gary and Mr. Rohr which resulted in a $100,000.00 settlement paid by U.S.F.&G., plaintiff herein, who had insurance coverage on Stanley Pfannenstiel. U.S.F.&G., plaintiff herein, had demanded that Continental, defendant herein, assume the defense, which was refused. The settlement, however, preserved the rights of U.S.F.&G. to bring this action against Continental to resolve the coverage questions."

The trial court found that Stanley Pfannenstiel had implied permission from Mr. Rohr to drive the car at the time of the accident and that appellant's policy provided liability coverage to Stanley Pfannenstiel. The court further found that appellant was primarily liable in the action which had been brought by Morris for his personal injuries (which had been settled), and appellant was ordered to pay appellee $25,000 as the full coverage provided by its policy with the Rohrs, together with interest and costs.

Appellant contends as error the finding of the trial court that Stanley Pfannenstiel had implied permission from Mr. Rohr to drive the car at the time of the accident.

The matter was presented to the trial court on written and documentary evidence. Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses and this court has as good an opportunity to examine and consider the evidence as did the trial court, and to determine *de novo* what the facts establish. *American States Ins. Co. v. Hartford Accident & Indemnity Co.,* 218 Kan. 563, Syl. 4, 545 P.2d 399.

The omnibus clause of the policy under consideration provided:

"PERSONS INSURED

. . . . . . . . . . . . . . . . . .

"(2) any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission . . . ."

For reasons of public policy, the omnibus clause of an automobile liability insurance policy is to be liberally construed. *Alliance Mutual Cas. Co. v. Hartford Accident & Indemnity Co.,* 210 Kan. 769, Syl. 2, 504 P.2d 161. The permission referred to in the omnibus clause of such a policy may be either express or implied and, under certain circumstances, implied permission for a second permittee may be found, even though the named insured has expressly prohibited the first permittee from allowing anyone else to operate the car. *Gangel v. Benson,* 215 Kan. 118, 523 P.2d 330. Factors justifying an implication of consent in the face of a restriction on others to use the car were set out in *Gangel* by quoting from *Gillen v. Globe Indemnity Company,* 377 F.2d 328 (8th Cir. 1967), as follows:

" 'Perhaps as a consequence of the harshness of [the strict rule denying coverage] many courts, when given the opportunity, have been able to discover an implied consent from the named insured even in the face of express prohibitions against the loaning of the insured automobile. If the first permittee is actually in the car, or the car is being used for the benefit of the first permittee or of the named insured, or if the first permittee has an equivalent of equitable title and has unfettered control over the daily use of the car outside of the surveillance of the named insured, or if the named insured is aware of past violations of instructions but allows the permittee to retain possession, or when an emergency arises, regardless of the express prohibitions against third party use, many courts will imply a consent on the part of the named insured for the third party's use . . . .' " (215 Kan. at 124-125.)

The court in *Gangel* went on to state that the *Gillen* "compendium of factors which might justify permission by implication *vis-a-vis* a contrary prohibition is comprehensive . . . ." The court then analyzed the facts of that case in relation to the factors enumerated in *Gillen* and found none of those factors present. Thus, coverage was denied.

In *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574, rev. den'd, 221 Kan. 756, ____ P.2d ____, this court considered the question of implied permission under an omnibus clause. After an analysis of the facts there present in relation to the *Gillen-Gangel* factors, implied permission and coverage were found to exist.

In this case, the trial court made the following findings in reference to the *Gillen-Gangel* factors:

"On the facts of this case, some of these factors apply and some do not. First of all, Gary Rohr, the first permittee, was actually in the car and it is equally obvious that the drive to Hays and the switch in drivers because of Gary's restricted driver's license was for the benefit of first permittee, Gary. Although Gary's payment of a substantial part of the purchase price, together with his joint name on the title indicates that he probably has the equivalent of equitable title, it is also clear that his father was going to exercise control over his daily use of the car. There was one prior violation concerning the pick-up but not, of course, relating to the new Mustang. Obviously, there is no emergency."

We agree with this analysis and appellant does not appear to challenge it. Appellant argues however that, apart from the *Gillen-Gangel* factors, "general" knowledge by the second permittee of the named insured's prohibition should as a matter of law prevent a finding of implied permission. Appellant points to the deposition of Stanley Pfannenstiel, the second permittee, in which he stated that although he did not know that Mr. Rohr had told Gary not to allow anyone else to drive the car, he was aware of the fact that Gary had previously been in trouble for permitting Stanley to drive the Rohr family pickup truck.

It is arguable that *actual* knowledge by the second permittee of restrictions placed on his or her use of an automobile by the named insured would ordinarily be sufficient to negate a finding of implied consent, but the record here reveals that Stanley had no such actual knowledge. As to Stanley's general knowledge of Mr. Rohr's restriction, it is to be remembered that Gary was not driving the family pickup but a new vehicle, in effect Gary's "own" car. It may reasonably be assumed that Stanley, even though he knew that he should not drive one of Gary's parents' vehicles, might see nothing contrary to this restriction in driving Gary's "own" car. Stanley's "general" knowledge of Mr. Rohr's restrictions in this instance does not prevent a finding of implied consent where one or more of the *Gillen-Gangel* factors are found to exist.

It is also argued that any benefit derived from the use of the car must be for the named insured and not just for the first permittee. The language of *Gillen* and *Gangel* is clear in that the car need only be "used for the benefit of the *first permittee* or of the named insured . . . ." (215 Kan. at 124-125; emphasis added.) The

better view appears to be that benefit to the first permittee *alone* is sufficient. See *St. Paul Fire and Marine Insurance Company v. Dean,* 308 F. Supp. 1378 (W.D. Ark. 1970); 7 Am. Jur. 2d, Automobile Insurance § 117, pp. 435-436.

Judgment affirmed.