(612 P.2d 1245)

No. 51,131

CIMARRON INSURANCE COMPANY, INC., *Appellant,* v. RICHARD J. LOFTUS, EDWARD J. FENTON, WILLIAM NYE, RHONDA HESS, and TRAVELERS INSURANCE CO., *Appellees.*

Opinion filed June 20, 1980.

*Tom Kelley* and *Thomas L. Toepfer* of Dreiling, Bieker & Kelley, of Hays, for the appellant.

*Christopher Randall* of Turner & Boisseau, Chartered, of Wichita, for the appellees William Nye and Rhonda Hess.

Before SPENCER, P.J., ABBOTT and PARKS, JJ.

SPENCER, J.: Plaintiff, Cimarron Insurance Company, Inc., commenced this action for a declaratory judgment pursuant to K.S.A. 60-257 and 60-1701, seeking a determination of whether coverage was afforded defendant Fenton under the omnibus clause of a policy of automobile liability insurance issued to defendant Loftus.

After discovery was completed, motions for summary judgment were filed and this cause was submitted on the record and the

briefs of the parties, together with the further stipulation that should the court find material issues of fact which normally would preclude summary judgment, such were to be resolved from the pleadings, depositions and other documents of record. Under such circumstances, the trial court had no peculiar opportunity to evaluate the credibility of witnesses and this court has as good an opportunity to examine and consider the evidence as did the court below, and to determine what the facts establish. *Stith v. Williams*, 227 Kan. 32, Syl. ¶¶ 1, 2, 605 P.2d 86 (1980); *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 336, 592 P.2d 74 (1979).

On July 3, 1976, defendant Fenton was operating a 1975 Chevrolet pickup owned by defendant Loftus, which collided with a motorcycle owned and operated by defendant Nye, on which defendant Hess was a passenger. As a result of the collision, it is alleged that Nye and Hess suffered personal injuries and have pending claims against Fenton.

The policy provision requiring interpretation and application in this case defines the term "persons insured" as:

"(a) The named insured;

. . . .

"(c) Any other person while using an owned automobile . . . with the permission of the named insured, provided his actual operation or . . . his other actual use thereof is within the scope of such permission . . . ."

Fenton was an employee of Loftus, who was engaged in business as a custom harvester during the 1976 harvest season. On the day of the accident, Loftus and his four-man crew, which included defendants Fenton and Marsh, had established a campsite approximately three miles from Brewster, Kansas. Rain the day before prevented harvesting operations on July 3rd and, at about 3:00 p.m. that day, defendants Fenton and Marsh had completed servicing the combines when they decided they wanted to go into town to the pool hall and drink some beer. Marsh testified the two of them asked Loftus if he would take them and his reply was that "we could use his pick-up to go in town," and Marsh recalled Loftus saying, "Don't drive all around the country." Fenton testified the two of them told Loftus, "We was going into town to play some pool and drink a few beers," and that Loftus replied, "Take the pick-up, but just don't drive all over the country." Loftus confirmed that Marsh and Fenton asked him to take them

to town before he left for Goodland and that he told them they could use the pickup "[t]o go to Brewster. . . . [t]o play pool." Loftus did not specifically mention drinking beer; however, during his redirect examination, Loftus did say that if they went into town he supposed they would drink a few beers.

Fenton and Marsh proceeded in the Loftus pickup to the local pool hall in Brewster where they played pool and drank beer. After a period of time, Fenton suggested they go to Colby, a city approximately eighteen miles from Brewster. Each wanted the other to call Loftus for permission, but neither did so. Nevertheless, they drove the pickup to Colby and later that evening, while in a tavern there, Fenton asked Marsh for the keys to the pickup in order that he might drive to a place where they had a different type of music. The keys were delivered to Fenton, who then left the tavern, and at approximately 11:30 p.m. the collision occurred.

Plaintiff concedes both Fenton and Marsh initially received permission from Loftus to drive the Loftus vehicle. However, plaintiff contends that Fenton and Marsh exceeded the scope of that permission when they drove the vehicle to Colby. Defendant argues that Fenton and Marsh did not exceed the scope of the permission granted and, even if they did so, the deviation was only minor.

Kansas cases construing and applying omnibus provisions of automobile liability insurance policies deal for the most part with "first permittee—second permittee" situations and have limited application to this case. Nevertheless, certain principles have been established:

1. For reasons of public policy, the omnibus clause of an automobile liability insurance policy is to be liberally construed. *Alliance Mutual Cas. Co. v. Hartford Accident & Indemnity Co.,* 210 Kan. 769, Syl. ¶ 2, 504 P.2d 161 (1972); *United States Fidelity & Guaranty Co. v. Continental Ins. Co.,* 1 Kan. App. 2d 722, Syl. ¶ 2, 573 P.2d 1106 (1977).

2. The permission referred to in the omnibus clause of an automobile liability insurance policy may be express or implied and may be established by facts and circumstances showing a course of conduct signifying acquiescence or consent on the part of the named insured. *Gangel v. Benson,* 215 Kan. 118, Syl. ¶ 1, 523 P.2d 330 (1974); *Alliance Mutual Cas. Co. v. Hartford*

*Accident & Indemnity Co.,* 210 Kan. 769, Syl. ¶ 1; *Jones v. Smith,* 1 Kan. App. 2d 331, Syl. ¶ 2, 564 P.2d 574, *rev. denied* 225 Kan. 844 (1977).

There is a divergence of opinion as to the legal theory to be applied to determine when a deviation from the purpose and use for which permission is granted will preclude coverage under the omnibus clause. Three rules have been adopted by courts generally: (1) The strict or conversion rule under which it is held that any deviation, however slight, will defeat liability under the coverage of the omnibus clause; (2) the liberal rule under which it has been held that, once permission is given, it will extend to any and all uses of the vehicle; and (3) the moderate or "minor deviation" rule under which it has been held that a slight deviation from the purpose and use for which permission was granted does not preclude coverage under the omnibus clause. 7 Am. Jur. 2d, Automobile Insurance § 263, p. 860 (1980). See also Annot., 5 A.L.R.2d 600.

This court has held, and we now reiterate that Kansas adheres to the moderate or "minor deviation" rule for the purpose of determining whether the coverage of the omnibus clause applies to a given state of facts. *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580, 585, 584 P.2d 1264 (1978).

Plaintiff argues that at the time of the collision Fenton was engaged in something considerably more than a minor deviation and notes that Fenton and Marsh specifically told Loftus they were intending to go to Brewster, a distance of three miles from the campsite, to play pool and that no mention was made of Colby, situated some eighteen miles from Brewster. For what it may be worth, our review of the record reveals that both Fenton and Marsh said they wanted to go to "town" to play some pool and drink a few beers. However, the record makes clear that it was intended that they would go to Brewster and that both of them had considerable doubts about driving on to Colby. Plaintiff labels this a material deviation. Plaintiff notes that the accident occurred some eight hours after the original permission was given, but nowhere do we find a time limitation placed on their outing. Loftus testified that his crew was on the payroll only during the times they were actually engaged in the harvest and, from the record, we conclude that during the period here in-

volved, Fenton and Marsh were on their own time with the consent of their employer, who believed it important that they have some time for rest and recreation. It is noted that Loftus testified he probably would not have given permission to drive to Colby because of valuable supplies and equipment stored on the pickup. However, the record does not disclose any such restriction for t reason, and we have no reason to believe there was better . ection in Brewster than in the larger town of Colby.

De' .n ts direct attention to the fact that Fenton and Marsh obt' ned 20 advance on their wages from Loftus and told him th' .y war d to go to town to drink beer and play pool, and that Lftus v .unteered the use of his pickup with only the restriction t t they not "drive all around the country." They point out that ewster had only very limited facilities of interest to men the ages of Fenton and Marsh and that Colby was the closest city offering relaxation and entertainment which they desired; that Fenton and Marsh went to Brewster for the purpose of shooting pool and drinking beer and while there decided to go to Colby for the same purpose; and at the time of the accident Fenton was in the process of driving to a tavern in Colby in order to continue the activity. Furthermore, Loftus knew and ostensibly approved of their proposed activities when he permitted their use of the pickup. Defendants say there were no restrictions on the permitted use other than that they not drive all around the country, and suggest that a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized.

Having examined the record, we are convinced that when Loftus granted permission for the use of his pickup he was fully aware of the purpose and the manner in which it would be used, *i.e.,* in order for Fenton and Marsh to go to town to play pool and drink beer. Although it was initially intended that these activities be conducted at Brewster, the fact they drove an additional eighteen miles to Colby in pursuit of the same activities for which permission had been granted was at most a minor deviation which does not preclude coverage under the omnibus clause.

Affirmed.