**FARM BUREAU INSURANCE COMPANY, INC., individually and as subrogee of Adrienne Petree, G & G Enterprises, Inc., James R. Ralston, and Esther Ralston, Plaintiff,**

v.

**SELECT INSURANCE COMPANY, Defendant.**

**Civ. A. No. 89–2379–O.**

United States District Court,
D. Kansas.

April 15, 1991.

---

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for plaintiff.

Daniel M. Zimmerman, Wilson E. Speer, Speer, Austin, Holliday & Ruddick, Olathe, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant's motion for summary judgment. Following a motor vehicle accident, plaintiff Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau), a Kansas corporation, brought an action in Johnson County District Court seeking to recover from defendant Select Insurance Company (Select), a Texas Corporation, amounts Farm Bureau expended as a result of physical damage and liability claims brought against Farm Bureau's insured, G & G Enterprises (G & G) and a G & G employee, Adrienne Petree (Petree).[1] Subsequently, the case was removed to this court pursuant to 28 U.S.C. § 1446. Since Farm Bureau has not responded to Select's motion for summary judgment, the court will treat the motion as uncontested pursuant to Local Rule 206(g) and, for the following reasons, grants Select's motion.

## FACTS

The following facts are undisputed: On Friday, July 24, 1987, Petree, a sales employee of G & G, an auto sales and leasing corporation, delivered a vehicle to the John Chezik Mitsubishi (Chezik) dealership. In exchange, Petree received possession of a 1985 Cadillac El Dorado, titled in Kansas, upon which she placed G & G dealership plates. She then drove the Cadillac back to G & G. Although Petree received possession of the Cadillac from Chezik, she did not receive a Certificate of Title or any other paperwork. It is undisputed that Petree received possession of the Cadillac pursuant to a possible "switch sale" and that she, as G & G's agent, intended to try to find a buyer for the Cadillac.

Subsequently, Petree was permitted to drive the Cadillac home for the week-end. Lew Gangel, owner of G & G, testified that it was his practice to allow those employees involved in the selling and buying of cars to drive company cars for personal use. Gangel stated that one of the purposes of allowing his sales employees personal use of company cars was "[b]ecause they were also sellers. And if they would drive around town looking for cars to buy and they were driving a car that I would like for them to sell, they would have an opportunity to sell it [to other car dealers at any time]." On Sunday, July 26, 1987, while driving a friend to his car from her apartment, Petree collided with a vehicle occupied by James and Esther Ralston. Both Ralstons sustained injuries. G & G was insured under a policy of insurance provided by plaintiff Farm Bureau and Chezik was insured under a policy provided by defendant Select.

On the day after the accident, Gangel spoke with the manager at the Chezik dealership and reached an understanding that,

1. Farm Bureau alleges that it is entitled to reimbursement from Select because Select (1) was the primary liability insurance carrier; (2) breached the contract of insurance by denying coverage to Petree and G & G; and (3) was negligent and acted in bad faith in denying coverage and refusing to defend.

because the Cadillac was in G & G's possession at the time of the accident, G & G would complete purchase of the Cadillac and assume responsibility for the physical damage to the vehicle. G & G then executed a sight draft in the amount of $13,500, or the agreed upon full market value of the Cadillac before the accident, backdated the sight draft to July 24, 1987, and tendered the draft to Chezik. G & G then made a claim under its policy with Farm Bureau for the physical damage and, subsequently, Farm Bureau paid to G & G the sum of $13,725 on the collision damage claim.

On September 17, 1987, Mr. Ralston filed suit against G & G claiming vicarious liability for the negligence of Petree, G & G's employee. In a subsequently amended petition, filed March 3, 1988, Ralston added Petree as a party defendant, abandoned the vicarious liability claim, and added a claim against G & G for negligent entrustment. Ralston's Third Amended Petition, filed May 12, 1988, made claims on behalf of Ralston individually and as conservator for the conservatorship estate of Esther Marie Ralston.

On May 31, 1988, Farm Bureau reached a settlement by paying $345,000 to the Ralstons. At that time, the only claim against G & G was the claim for negligent entrustment, a claim clearly not covered by the Select policy. In effecting the May 31, 1988, settlement agreement, Farm Bureau made no allocation of its policy proceeds between the risk exposure of its insured, G & G, and that of Petree. Pursuant to the settlement agreement, the Ralstons released G & G from liability, reserved the right to proceed against any potential coverage provided to Petree under any other insurance policy, and entered into a covenant not to execute upon the personal assets of Petree following any future recovery on that claim. Subsequently, Select reached a settlement with respect to Petree's liability by paying the entire amount of its policy limits of $1,000,000 to the Ralstons. Gulf Insurance Company, Chezik's excess insurer, agreed to pay for the benefit of Esther Ralston the sum of $5000

per month during her life for a minimum of 20 years.

## STANDARDS

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## DISCUSSION

Farm Bureau's present claim against Select is based upon the contention that, as to the liability claims, G & G and Petree were covered as insureds under the Select policy since Petree, as G & G's agent, was operating the Cadillac with Chezik's permission and outside the scope of her employment with G & G. With respect to the physical damage claim, Farm Bureau contends it is entitled to recover on the basis that Chezik

was the owner of the Cadillac at the time of the accident. Select counters that even if Chezik were the owner of the Cadillac at the time of the accident (1) G & G and Petree were excluded from coverage under the policy and (2) with respect to the collision claim, Farm Bureau, as G & G's subrogee, is bound by G & G's agreement with Chezik by which G & G assumed responsibility for the physical damage.

*Liability Claim*

The court agrees with Select that both G & G and Petree are excluded from coverage. First, with respect to G & G, the basis asserted by Farm Bureau in the Pretrial Order for coverage under the Select policy is G & G's vicarious liability as the employer of Petree.[2] As stated previously, however, the only claim against G & G at the time of settlement was a claim for G & G's negligent entrustment of the vehicle to Petree[3] and Farm Bureau has not contended that the Select policy can be construed to extend coverage to G & G for negligent entrustment. Since the vicarious liability claim was abandoned by the Ralstons before settlement was reached with Farm Bureau, the only possible exposure Select could have under its policy is coverage for Petree's liability.

Farm Bureau's theory of recovery from Select for sums paid on account of the liability of the driver, Petree, is that "the vehicle Petree was operating was actually owned by Chezik Mitsubishi [and insured by Select] at the time of the accident and Petree was operating the vehicle with the permission of Chezik [and outside the scope of her employment]." Acknowledging that there is a dispute regarding the ownership of the Cadillac at the time of the accident, Select counters that, even if Chezik were the owner of the vehicle, Petree is excluded from coverage as an insured under the terms of their policy. Again, we agree.[4]

In reviewing the applicable provisions of Select's policy, Part I of the policy defines an "insured" as "any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance." Part IV—Liability Insurance—provides as follows:

WHO IS AN INSURED

1. For covered autos.

a. You are an insured for any covered auto.

b. Anyone else is an insured while using with your permission a covered auto except:

(1) The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.

(2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking or storing autos unless the business is your garage operations.

(3) Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership. However, if a customer of yours:

(a) Has no other available insurance (whether primary excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.

---

**2.** Specifically, the Pretrial order states that "[p]laintiffs claim that ... G & G was insured under the Select policy based on Ralston's claims as a person sued as a result of liability 'while using' the Chezik automobile."

**3.** Deposition testimony indicated that at the time of the accident, Petree was driving with a suspended license and that G & G had not

checked her driving record prior to employing her.

**4.** In view of our ruling on the issue of Petree's coverage under the Select policy, plaintiff's motion for partial summary judgment on the issue of vehicle ownership is denied as moot.

■ Pursuant to the policy, the court concludes that Petree is excluded from coverage as an insured under several of the above provisions.[5] First, if, as Farm Bureau contends, Petree was outside the scope of her employment with G & G at the time of the accident, Petree would be excluded from afforded coverage under Section 1(b), the omnibus clause, which provides coverage to all permissive users of covered vehicles. For reasons of public policy, omnibus clauses in automobile liability insurance policies are construed liberally. *Alliance Mutual Cas. Co. v. Hartford Accident & Indemnity Co.*, 210 Kan. 769, Syl. ¶ 2, 504 P.2d 161 (1972). Nevertheless, the party claiming coverage must establish the scope of permission for use of the vehicle as either express or implied by a course of conduct signifying acquiescence or consent on the part of the named insured. *Gangel v. Benson*, 215 Kan. 118, Syl. ¶ 1, 523 P.2d 330 (1974).

Although here it is unclear whether the law of Kansas or Missouri would apply to this case, courts in both states apply the "minor deviation rule" to determine when a deviation from the purpose and use for which permission is granted will preclude coverage under an omnibus clause. Under this rule, when a permissive user deviates from the intended and permitted use of the vehicle, coverage will be afforded only if it is determined that the deviation is minor. *See Cimarron Ins. Co., Inc. v. Loftus*, 5 Kan.App.2d 90, 612 P.2d 1245 (1980); *United States Fidelity and Guar. Co. v. Hokanson*, 2 Kan.App.2d 580, 585, 584 P.2d 1264 (1978); *Auto Owner's Ins. Co. v. McGaugh*, 617 S.W.2d 436 (Mo.Ct.App. 1981).[6] The classification of a use as either major or minor is a question of fact to be determined on a case by case basis and is

generally related to the purpose inherent in the permission given rather than the distance driven. *See Cimarron Ins. Co. v. Loftus, supra*, 5 Kan.App.2d at 94, 612 P.2d 1245 (driving vehicle an additional eighteen miles in pursuit of same purpose for which permission was granted held to be a minor deviation).

Here, it is undisputed that Chezik granted permission to Petree to operate the vehicle as G & G's agent solely for business purposes. Therefore, Petree's personal week-end use of the vehicle to drive a friend to his car from her apartment, was a major deviation exceeding the scope of this permission. Since no genuine issues of material fact exist with respect to whether Petree's personal use of the vehicle is a major deviation, the court concludes that she is not afforded coverage under the omnibus clause of the policy.

■ Moreover, even if Petree's use of the vehicle at the time of the accident could somehow be determined to be business-related, she would be excluded from coverage pursuant to Section 1(b)(2) of the policy, which excludes persons in the business of selling automobiles,[7] and Section 1(b)(3), which excludes Chezik's "customers." Although the word "customer" is not defined in the Select policy, the meaning of a word in an insurance policy must be construed as understood by ordinary persons. *Frontier Ford, Inc. v. Carabba*, 50 Wash.App. 210, 747 P.2d 1099, 1103 (1987). Generally, a "customer" is defined as a potential purchaser of a commodity, *id.*, and here, G & G, through its agent Petree, was, at a minimum, a potential purchaser of the Cadillac. Moreover, G & G's position as a Chezik "customer" is strengthened by the undisputed facts that, during 1987, G & G

---

**5.** The exclusions would also apply to G & G as Petree's employer.

**6.** The two other rules which have been applied in other jurisdictions to determine when a deviation from the purpose and use for which permission is granted precludes coverage under an omnibus clause are the "strict" or "conversion" rule under which it is held that any deviation will preclude coverage and the "liberal" rule under which once permission is given, it extends to all uses of the vehicle. *See Cimarron*

*Ins. Co. v. Loftus, supra*, 5 Kan.App.2d at 93, 612 P.2d 1245, citing 7 Am.Jur.2d, Automobile Insurance § 263, p. 860 (1980).

**7.** Since Gangel, G & G's owner, stated that he allowed his salespersons continuous use of company vehicles to drive around town so they could be sold at any time, Petree arguably could have been working in the business of selling autos at all times, including at the time of the accident.

regularly and repeatedly had business dealings with the Chezik companies, completing a total of 18 transactions, five with John Chezik Mitsubishi and 13 with related Chezik companies in that year alone.[8]

In sum, the court concludes that Petree was either (1) operating the vehicle outside the scope of her employment, in which case her operation of the vehicle would have been a major deviation from the scope of permission granted to her by Chezik, or (2) operating the vehicle within the scope of her employment, in which case she would have been excluded under the policy as a person in the business of selling autos or as a customer. In either case, Petree is excluded from coverage under the Select policy. Accordingly, since the liability claims against both Petree and G & G are not covered risks pursuant to the Select policy, the court grants Select's motion on this ground.[9]

*Physical Damage Claim*

■ Farm Bureau contends it is entitled, as G & G's subrogee, to recover against Select the amount paid for physical damage to the Cadillac. With respect to this claim, it is the general rule that, in such an action, a party making a claim through a derivative right acquires no greater rights in law or equity than the party for whom it was substituted and, therefore, cannot make a claim its subrogor could not make. *Stoverink v. Morgan,* 660 S.W.2d 743, 745 (Mo.Ct. App.1983). Further, when a particular insurer claims a right of subrogation, that insurer stands in the shoes of its insured and any defenses against the insured are likewise good against the insurer. *Western Motor Co., Inc. v. Koehn,* 242 Kan. 402, 748 P.2d 851 (1988); *Shelman v. Western Casualty & Surety Co.,* 1 Kan.App.2d 44, 55, 562 P.2d 453, *rev. denied,* 221 Kan. 757 (1977).

Here, it is undisputed that shortly after the accident, G & G's owner, Lew Gangel accepted responsibility for the collision loss of $13,500 stating that "I knew that was a fair replacement value of the vehicle and that would be fair for me to buy the car for that amount and fair for my insurance company to pay that amount if it was a total loss." He then tendered a sight draft for the full amount to Chezik.

Clearly, any subsequent attempt by G & G to recover against Select for the collision loss would have been prevented by principles of waiver and estoppel, based on G & G's undisputed binding admissions and assumption of liability. Similarly, since Farm Bureau stands in the shoes of its insured for purposes of the subrogation claim, Farm Bureau is equally barred and estopped from claiming that Chezik's insurer is liable for the loss and, accordingly, the court grants Select's motion for summary judgment on the physical damage claim.[10]

IT IS THEREFORE ORDERED that plaintiff's motion for partial summary judgment (Doc. #23) is denied.

---

**8.** Although pursuant to Sections 1(3)(a) and (b), the customer exclusion retains validity only when the customer is covered by other insurance, here it is undisputed that Petree was insured under Farm Bureau's policy as either an employee acting within the scope of employment or under the automobile hazard provision, affording coverage to:

"(a) Any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

The policy then defines "Automobile hazard" as: (1) The ownership, maintenance or use (including loading and unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for nonbusiness purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person.

**9.** Since the court has decided neither G & G nor Petree were covered under the Select policy, there is no need for the court to address the other issues raised in Select's supplemental motion for summary judgment.

**10.** As Select argues, if Farm Bureau claims it was defrauded by the backdated sight draft, its remedy is to proceed against G & G for rescission of its collision loss payment.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (Doc. # 40) is granted.