**CITIZENS INSURANCE COMPANY OF AMERICA, et al., Plaintiffs,**

v.

**Ronald A. CHARITY, et al., Defendants.**

**Civ. A. No. 93–2382–GTV.**

United States District Court, D. Kansas.

Oct. 17, 1994.

A. Bradley Bodamer, Eric D. Braverman, Morrison & Hecker, Overland Park, KS, Robert W. Schuller, Farmland Industries, Inc., Kansas City, MO, for plaintiffs.

Jerry R. Palmer, Palmer & Lowry, Topeka, KS, for Dickson Petrie.

Mark A. Buck, Christopher M. Rohrer, Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS, for Interior Contractors, Inc.

Mark A. Buck, Davis, Unrein, Hummer, McAllister & Buck, Topeka, KS, for Joseph H. Krentz.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is a declaratory judgment action brought by Citizens Insurance Company of America and Hanover Insurance Company to determine whether the business auto policy and the commercial umbrella liability policy issued by the plaintiffs provide coverage under the policies' omnibus clauses to the defendant Ronald Charity. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

This case is before the court on the following motions for summary judgment:

Motion for Summary Judgment of Defendant Interior Contractors, Inc. (Doc. 39);

Motion for Summary Judgment of Defendant Dickson Petrie (Doc. 42);

Motion for Summary Judgment of Plaintiffs Citizens Insurance Company of America and Hanover Insurance Company (Doc. 46);

All of the motions have been responded to and the court is prepared to rule on the motions. For the reasons stated in this memorandum and order, the court concludes that there was coverage under the policies, and the motions for summary judgment of defendants Interior Contractors, Inc., and Dickson Petrie are granted, and the motion for summary judgment of plaintiffs is denied.

### I. Introduction

Defendant Ronald Charity was driving a vehicle insured by the plaintiffs when he was involved in an accident with defendant Dickson Petrie. Plaintiffs argue that Ronald Charity is not covered under the omnibus clauses of the automobile insurance policies for two reasons. First, plaintiffs assert that Charity did not have permission to drive the insured vehicle. Second, plaintiffs argue that even if permission was granted, Charity exceeded the scope of that permission. Defendants dispute these assertions.

### II. Factual Background

The relevant facts are largely undisputed. The facts established by the parties in accordance with D.Kan.Rule 206(c) are as follows:

On February 28, 1993, defendant Ronald Charity was driving a 1988 Pontiac Trans Am owned by defendant Interior Contractors, Inc. and was involved in an accident with defendant Dickson Petrie. The car was insured under a business auto policy and a commercial umbrella policy issued by the plaintiffs. Both policies contained omnibus clauses that provided coverage for anyone using the vehicle with the permission of the insured. The applicable provisions of the insurance policies provide as follows:

**BUSINESS AUTO POLICY:**

A. Coverage

We will pay all sums as an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

. . . .

1. Who Is an Insured

The following are "insured":

(a) You for any covered "auto".

(b) Anyone else while using with your permission a covered "auto" you own, hire, or borrow. . . .

**COMMERCIAL UMBRELLA LIABILITY COVERAGE POLICY:**

1. Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies.

. . . .

2. Each of the following is also an insured:

. . . .

(e) With respect to the use by you or within the scope of your permission of any "auto" which you own or which is borrowed, hired or leased by you or on your behalf:

(1) any person while engaging in the use of such "auto"; . . . .

Defendant Joseph Krentz is the president and sole shareholder of Interior Contractors.

On Saturday, February 27, 1993, Joseph Krentz gave his son Kevin Krentz permission to drive the Trans Am for a purely social purpose and no restrictions were placed on Kevin's use of the vehicle.

Kevin left his parent's house in the Trans Am the evening of February 27, 1993 to pick up two friends, Justin Bogart and Ronald Charity. Kevin drove Bogart and Charity to Mr. D's II tavern in Topeka, Kansas.

Kevin left Mr. D's II at approximately 12:30 a.m. on February 28th with other friends. Before he left the tavern, Kevin discussed transportation arrangements with Bogart while Charity was taking his turn shooting pool. Kevin gave Bogart the keys to the Trans Am. Kevin told Bogart that Bogart and Charity should try to get a ride with two girls they had met at the tavern. If they were unable to get a ride with the girls, Kevin told Bogart that Bogart and Charity could take the Trans Am and that Kevin would pick up the car or his keys at Bogart's house "after the bars." Bogart's house was approximately five blocks from the Krentz residence. Mr. D's II was approximately seven miles from the Krentz residence.

It was Kevin's understanding that Charity had heard the conversation between Kevin and Bogart. Charity, in fact, did not hear the conversation. Kevin did not say anything to Bogart about who should drive the car as between Bogart and Charity. Neither Bogart nor Charity appeared intoxicated to Kevin when he left the tavern.

Bogart and Charity left Mr. D's II at approximately 2:00 a.m. and decided to go to a party. Charity noticed that Bogart was having trouble operating the car, and Bogart admitted to Charity that he was intoxicated. Charity then took over driving the Trans Am and hit Dickson Petrie, a pedestrian, on the way to the party.

Interior Contractors owned multiple vehicles that were covered under the above insurance policies. Joseph Krentz had no formal policies or rules with respect to use of corporate vehicles, and has allowed employees and family members to use corporate vehicles for personal business. Joseph Krentz expected that those who have permis-

sion to use the corporate vehicles will use common sense in operation of the vehicles and in delegation of the use of the vehicles to another person. Joseph Krentz is aware that his children have delegated the use of corporation vehicles to other persons and they are free to do so within reason. Krentz has had no occasion to discipline any child for delegating the use of such a vehicle to another person.

Joseph Krentz has known Charity for four years. Charity has worked for Interior Contractors and has driven corporate vehicles when employed by the corporation.

### III. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment. *Id.*

### IV. Discussion

In determining whether the above omnibus clauses extend coverage to Ronald Charity, the court must determine whether Charity had permission to drive the Trans Am. If permission was granted, the court must then determine whether Charity acted within the scope of that permission.

An omnibus clause in an automobile insurance policy extends coverage to a third party when the named insured grants the third party permission to operate the insured vehicle. 12 Couch on Insurance 2d § 45:291 (1981). The purpose of an omnibus clause is to protect the insured, the third party driver, and members of the general public who might be injured in an accident with the insured vehicle. *Id.* As a matter of public policy, an omnibus provision of an insurance policy should be liberally construed. *United States Fidelity & Guaranty Co. v. Continental Ins. Co.*, 1 Kan.App.2d 722, 724, 573 P.2d 1106, 1108 (1977) (citing *Alliance Mutual Casualty Co. v. Hartford Accident & Indem. Co.*, 210 Kan. 769, Syl. 2, 504 P.2d 161, 162 (1972)).

As a general rule, the permission of the named insured covered by an omnibus provision may be express or implied. *Alliance Mutual Casualty*, 210 Kan. at 773, 504 P.2d at 165. The Kansas court has staunchly adhered to the doctrine of implied consent. *Gangel v. Benson*, 215 Kan. 118, 121, 523 P.2d 330, 333 (1974). "[Implied consent] may be established by a showing of a course of conduct or relationship between the parties, which signifies acquiescence or consent of the insured." *Alliance Mutual Casualty*, 210 Kan. at 773, 504 P.2d at 165. Lack of objection by the insured may be sufficient to imply consent. *Gangel*, 215 Kan. at 121, 523 P.2d at 333.

In some cases the initial or first permittee may be able to give valid consent to a second permittee. This "delegation of permission" may be a function of the first permittee's identity as a member of the family of the named insured or a matter of the scope of

permission given to the first permittee. 12 Couch on Insurance 2d § 45:397. The initial grant of permission may be broad enough to allow the first permittee to allow others to use the automobile and thus extend coverage under an omnibus clause to the second permittee. *Id.* § 45:399.

In the present case, Kevin Krentz was the first permittee and had the express permission of Joseph Krentz, president and sole shareholder of the named insured Interior Contractors to drive the Trans Am on February 27, 1993. No restrictions were placed on Kevin's use of the car that evening, and Joseph Krentz was aware that Kevin wanted to drive the car for social purposes and not for any corporate purpose.

In order to find coverage under the insurance policies for Ronald Charity, defendants must establish that Joseph Krentz's authorization to Kevin was broad enough to allow Kevin to grant permission to a second permittee. The second permittee then would have the implied permission of the insured.

Joseph Krentz was aware that his son Kevin allowed others to use corporate vehicles. Joseph Krentz never objected to this practice, nor did he ever discipline Kevin for allowing another person to drive a corporate vehicle. Joseph Krentz's only instruction to Kevin was to use his own "common sense" in operation and delegation of the use of the corporate vehicles. Pursuant to these facts, the scope of Joseph Krentz's permission was broad enough to allow Kevin, the first permittee, to authorize a second permittee to drive the insured Trans Am.

Kevin gave the keys to the Trans Am to Justin Bogart and told him that Bogart and Charity could use the car if they were unable to get a ride with the two girls. Kevin planned to meet them after the bars at the Bogart residence. It was Kevin's belief that Charity had heard the conversation. Kevin did not care whether Bogart or Charity drove the Trans Am. The court concludes that Kevin Krentz authorized Bogart and Charity as second permittees to drive the Trans Am.

Many of the cases cited by the plaintiffs involve situations in which the insured ex-pressly prohibited the first permittee from allowing others to drive the insured vehicle. In some circumstances Kansas courts have found valid implied permission for a second permittee in the face of an express prohibition. *Alliance Mutual Casualty,* 210 Kan. at 773, 504 P.2d at 165; *Continental Ins. Co.,* 1 Kan.App.2d at 722–25, 573 P.2d at 1107–09; *Jones v. Smith,* 1 Kan.App.2d 331, 335–36, 564 P.2d 574, 578–79 (1977). The Kansas Supreme court has looked at several factors in this determination:

> If the first permittee is actually in the car, or the car is being used for the benefit of the first permittee or of the named insured, or if the first permittee has an equivalent of equitable title and has unfettered control over the daily use of the car outside of the surveillance of the named insured, or if the named insured is aware of past violations of instructions but allows the permittee to retain possession, or when an emergency arises, regardless of the express prohibitions against third party use, many courts will imply a consent on the part of the named insured for the third party's use.

*Gangel,* 215 Kan. at 124–25, 523 P.2d at 335 (quoting *Gillen v. Globe Indem. Co.,* 377 F.2d 328 (8th Cir.1967)).

Plaintiffs argue that none of the above *Gillen* factors are present here and that the consent of the insured, therefore, is not implied. As defendants point out, however, there was no express prohibition by the named insured in the present case. Thus, the *Gillen* factors are not directly applicable.

Defendants argue that even if the court considers the *Gillen* factors, use of the car by Bogart and Charity was a benefit to Kevin Krentz. By delegating the use of the car, Kevin was relieved of the responsibility of driving Bogart and Charity home. Additionally, Bogart's house was closer to the Krentz residence than Mr. D's II. Thus, it was a more convenient place for Kevin to pick up the car.

The benefit derived from the use of the car need not be for the named insured. *United States Fidelity & Guaranty Co. v. Continental Insurance Co.,* 1 Kan.App.2d

722, 725, 573 P.2d 1106, 1109 (1977). Benefit to the first permittee alone is sufficient. *Id.* at 726, 573 P.2d at 1109. The court finds that the Bogart's and Charity's use of the car was a benefit to Kevin Krentz and indicates implied consent by Joseph Krentz.

Plaintiffs argue that this court should reach the same conclusion as the court in *National Farmers Union Property & Casualty Co. v. Farm Bureau Mutual Ins. Co.*, 194 Kan. 93, 397 P.2d 81 (1964). Like the present case, *National Farmers Union* did not involve an express prohibition. The court held that the insured had not given his implied permission to his son's coemployee to drive the insured's car merely because the insured did not object when his son previously allowed his boss to drive the car. *Id.* at 95, 397 P.2d at 83. According to the court, it did not follow that the insured agreed to allow the son's coemployee to drive the car when the insured believed the coemployee to be fourteen years old.

The court does not find the plaintiffs' argument persuasive. *National Farmers Union* is distinguishable from the present case. There is no evidence that Joseph Krentz would object to his son's delegation of use to Ronald Charity. Joseph Krentz had known Charity for four years and had allowed Charity to drive corporate vehicles when he was an employee.

■ Having concluded that under Kansas law, Ronald Charity had the implied permission of the insured to drive the Trans Am on February 28, 1993, the court must next determine if Charity acted within the scope of that permission when he drove to a party instead of straight to the Bogart residence.

In construing omnibus clauses, Kansas adheres to the "minor deviation" rule in determining whether a permittee acted within the scope of the insured's permission. *Cimarron Ins. Co. Inc. v. Loftus,* 5 Kan.App.2d 90, 93, 612 P.2d 1245, 1247 (1980). The minor deviation rule is the intermediate approach between the strict rule that any deviation, however slight, defeats liability and the liberal rule that once permission is granted, coverage extends to any use by the permittee. *Id.* Under the minor deviation rule, "a slight deviation from the purpose and use for which

permission was granted does not preclude coverage under the omnibus clause." *Id.*

In *Cimarron Insurance* the permittees were authorized by the insured to drive to the nearby town of Brewster to play pool and drink beer. *Id.* at 91, 612 P.2d at 1246. The permittees first went to Brewster, and later drove eighteen miles farther to Colby in pursuit of the same activities. *Id.* at 92, 612 P.2d at 1246. The court held that driving the additional eighteen miles to Colby was, at most, a minor deviation from the permission granted and that it did not preclude coverage under the omnibus clause. *Id.* at 94, 612 P.2d at 1248.

In this case, the fact that Bogart and Charity planned to stop at a party before returning to the Bogart residence was an act within the scope of permission granted or was, at most, a minor deviation and does not preclude coverage under the omnibus clauses.

IT IS, THEREFORE, BY THE COURT ORDERED that the Motion for Summary Judgment of Defendant Interior Contractors, Inc. (Doc. 39) is granted.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Defendant Dickson Petrie (Doc. 42) is granted.

IT IS FURTHER ORDERED that the Motion for Summary Judgment of Plaintiffs Citizens Insurance Company of America and Hanover Insurance Company (Doc. 46) is denied.

IT IS FURTHER ORDERED that resolution of these motions disposes of all remaining issues and the case is now closed.

**IT IS SO ORDERED.**