Western States Mutual Insurance Co., a Corporation, Plaintiff-Appellee, v. Standard Mutual Insurance Company, a Corporation, and David J. Glawe, Defendants-Appellants, and Robert Glover, Defendant.

Gen. No. 11,383.

Second District, First Division.

June 9, 1960.

Maynard and Maynard, of Rockford, for appellant.

No brief nor appearance filed in behalf of appellee.

SPIVEY, J.

Plaintiff-Appellee, Western States Mutual Insurance Company, brought suit on April 17, 1959, for declaratory judgment to have declared its rights and liabili-

ties under a certain policy of automobile insurance issued by Western to Robert Glover, one of the defendants herein.

In addition to Glover, Standard Mutual Insurance Company and David J. Glawe were made parties defendant. Standard had issued a similar policy of automobile insurance to Glawe.

On December 22, 1956, Glover was given permission by Glawe to use and operate his, Glawe's automobile insured by Standard. While operating the Glawe automobile Glover was involved in a collision with a tree causing damage to the Glawe automobile in the amount of $649.23.

Thereafter, Glover paid Glawe $50 as his deductible portion of said damage under Standard's policy and Standard paid to Glawe the sum of $599.23 under the collision coverage of its policy being Coverage E.

Subsequently Glawe brought suit against Glover for $599.23 to enforce the subrogation rights of Standard resulting from the damage caused while Glover was driving Glawe's automobile. This suit resulted in a judgment in favor of Glawe and against Glover in the amount of $599.23. No appeal was taken from this judgment entered on April 14, 1959, and the judgment is now final.

The relief prayed in Western's declaratory judgment suit was that the Court: decree, declare, and determine that Western, by the terms, conditions, and exclusions of its policy issued to Glover is under no legal duty to pay the judgment against Glover and in favor of Glawe for the use of Standard in the sum of $599.23; and decree, declare and determine that the insurance afforded by Standard was the primary insurance covering Glawe's automobile and while being operated by Glover, and that Western's policy afforded no coverage to Glover and was excess to that of Standard.

After a hearing the Court entered its order, finding among other things previously recited herein, that at the time of the occurrence Glover was a permissive user of Glawe's automobile and as such became an additional insured under Paragraph III (a) of Standard's policy; that Western's policy by its terms was excess coverage over other valid and collectible insurance with respect to temporary substitute automobiles operated by Glover and that at the time of the occurrence Glawe's automobile was not being used by Glover as a temporary substitute automobile within the terms of said policy, and that by reason thereof Western is not liable under its policy to afford protection or indemnification or coverage of any kind to Glover; that the Financial Responsibility Act of Illinois requires Standard's policy to insure each person using said automobile with the express or implied permission of the named insured; that Standard is liable under its policy to pay any judgment against Glover and particularly Glawe's judgment against Glover; and that Exclusion (f) of the Standard policy is inapplicable or ineffective to relieve Standard from liability under its policy to protect and afford coverage to Glover.

The court then ordered, adjudged, and decreed: (1) Western owes no duty under its policy to Glover in connection with any claims arising out of the occurrence in question; (2) Glover was a permissive user of Glawe's automobile and as such was an additional insured under Standard's policy with Glawe, and Standard has a duty under its policy to protect and indemnify Glover; (3) Standard's payment to Glawe of $599.23 under its collision coverage constitutes payment and satisfaction of the judgment in favor of Glawe against Glover, and (4) Glawe as subrogee for Standard cannot recover the sum of $599.23 from Glov-

er and that Glover be released from Glawe's judgment against him.

Standard appeals and contends that paragraphs 2, 3, and 4 of the judgment order are in error and so limit their appeal by their notice of appeal.

Standard, for reversal, says (1) that although Glover's permissive use constituted him an additional insured under the property damage liability coverage B of Standard's policy, yet by the insuring agreement, the company was not liable to Glover for property damage because of Exclusion (f) of the policy and particularly because the property damage was found by a jury to be proximately caused by the negligence of the permissive user; (2) that Paragraph 17 of Conditions provides that no payment under the collision feature of the policy shall provide benefit, directly or indirectly, to a bailee liable for damages, and so, Standard's recovery against the permissive user is not precluded by the collision payment; (3) that the Financial Responsibility Act does not negative Exclusion (f) or Paragraph 17 of the policy; and (4) that Glawe's judgment against Glover is enforceable against Glover.

No briefs were filed on behalf of Western or Glover.

The pertinent provisions of Standard's policy issued on Glawe's automobile provide:

## INSURING AGREEMENTS

### I. Coverage A—Bodily Injury Liability.

Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof caused by accident and arising out of the ownership, maintenance or use of the automobile.

381

Coverage E—Collision or upset. To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto.

III. Definition of Insured. (a) with respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured, and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

## EXCLUSIONS

This policy does not apply:

(f) under Coverage B to injury to or destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy.

## CONDITIONS

9. Financial Responsibility Laws—Coverages A and B. When this policy is certified as proof of financial responsibility for the future under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the poli-

382

cy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in the policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

17. No Benefit to Bailee-Coverages D, E, F, G, H, I and J. The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any carrier or bailee liable for the loss of the automobile.

19. Subrogation—Coverages A, B, D, E, F, G, H, I and J. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Appellants call our attention to the case of Wyatt v. Wyatt, 58 N.W.2d 873 (Minn.) as being fully determinative of the instant case. We do not think so.

In that case the defendant, named insured, held a customary policy of insurance used for insuring the owner of an automobile against liability for personal injury and property damage. Defendant did not own an automobile. In the space in the policy form in which the automobile covered by the insurance is usually described, by endorsement, there was inserted in part, "The insurance applies to the named insured with respect to his operation of or presence in any private passenger automobile." An exclusion under the property damage liability similar to Exclusion (f) of the instant policy was contained in that policy. The defendant named insured, while driving an automobile owned by Charles Wyatt as a bailee with the permission of the owner, damaged the automobile. Charles

Wyatt recovered a judgment for the damages to his automobile against the defendant. Thereafter supplemental proceedings were instituted against defendant's insurance company as garnishee resulting in a judgment against the garnishee. The Supreme Court, in reversing the garnishment judgment, stated that in reading the whole contract together it was intended to afford (defendant) "one who was driving an automobile which he did not own the same coverage as would be afforded to an owner of an automobile described in the policy in the absence of the endorsement." The court went on to hold that the defendant insured was "in charge of" the automobile and came within the exclusion provisions of the policy.

In the instant case Standard's insured, Glawe, was not the driver of the car nor "in charge of" the automobile at the time of the occurrence.

Liability is not asserted against Glover's company in this action. The facts in the Wyatt case are easily distinguishable.

The Wyatt case does not stand for the interpretation of a similar policy insofar as would apply to an additional insured as contemplated by Insuring Agreement III (a) of Standard's policy. We have been unable to unearth any authority interpreting the pertinent provisions of the instant policy insofar as they would apply to the facts here presented.

Standard admits that Glover, being a permissive user, was an additional insured by definition under Insuring Agreement III. This Insuring Agreement extends protection to a permissive user only in respect to Coverages A and B, bodily injury liability and property damage liability. By the terms of Coverages A and B, the company agrees to pay on behalf of the insured or additional insured all sums which they have become legally obligated to pay caused by accident and arising out of the ownership, maintenance or use

of the automobile. The intention is to insure against liability to others for bodily injury and damage to property, other than the insured's automobile or other property of the insured or additional insured.

Exclusion (f) by its terms applies only to Coverage B and not to any of the other Insuring Agreements including Coverage E.

In Parry v. Maryland Casualty Co., 228 App. Div. 393, 240 N. Y. S. 105, it was said, in explaining the reason for the exclusion, "As to such property, both frequency of accident and opportunities for fraud create a high hazard and make the risk undesirable at least at the rate charged for the ordinary coverage."

We cannot agree that Standard has a duty under its policy to protect and indemnify Glover as to a claim for damages to the insured automobile. This was clearly excluded by Exclusion (f). It is true that as an additional insured, Glover is entitled to protection under Coverage B but Standard's duty is governed by the policy and this particular claim is not covered by the terms of the policy.

The damage to Glawe's automobile was insured under Coverage E, "Collision and Upset," subject to the deductible amount stated in the policy. This provision is a contract provision which follows the insured automobile without regard to liability. It was this payment under Coverage E that Standard seeks to recover as subrogee.

In Paragraph 19 of the conditions, the "insured" is required to "do whatever is necessary to secure such rights (subrogation) for the company." In this instance, since this term "insured" is used rather than "named insured," we know that the term includes the "named insured" as well as the permissive user. By the terms of the policy, then, the permissive user is obliged to cooperate with the company in attempting to recover collision payments made to the named

insured. Such a requirement is reasonable so long as the recovery is sought from a third person not an insured under the terms of the policy. But, as in the instant situation, it is inconceivable to us to assume that it was the intention of either the company or the named insured that a permissive user would be obliged to cooperate with the company in order that the company could secure a judgment against the permissive user. It seems to us elementary that Standard has no right of subrogation against its insureds. It has accepted a premium in return for which it has agreed to pay collision losses without regard to fault. From the plain language of condition 19, we conclude that no subrogation rights exist in favor of Standard against its own insureds.

Appellants contend that Glover was a bailee of the automobile and as such by Condition 17 would not be entitled to any benefits, either directly or indirectly, under Coverage E.

When Standard satisfies its obligation to its named insured under the collision feature of this policy, the benefit enures to the named insured. The permissive user is not benefited so far as Standard is concerned, since it never had a right of action against its own insured. It is true that the named insured (owner) may determine whether he shall present his claim for loss against his bailee or his company. If the owner selects the company as he may do, it is not the act of the company in paying the collision loss which benefits the bailee, but rather the decision by the owner to make claim under the collision feature. Condition 17 is neither excuse to refuse to pay a collision loss nor any justification for a subrogation claim against an insured under the policy.

 A policy is construed most favorably to the named insured and others who are covered by it. Rashinski v. Travelers Casualty Ins. Co., 312 Ill. App.

260, 38 N.E.2d 362, and Scott v. Inter-Insurance Exchange of Chicago Motor Club, 267 Ill. App. 105, affirmed 352 Ill. 572, 186 N. E. 176.

█ It is the view of this court, from a consideration of the entire policy, that it was not intended that the insurance company would have a right of action against a person to whom the named insured lends his automobile, even if the person is at fault, since such person is intended to be covered as an additional insured.

Neither Standard nor Western attempt to insure their named insureds under Coverage E while operating or using other automobiles where there is any other insurance which would apply thereto. (Insuring Agreement V. Use of other automobiles.)

Condition 17 applies to Coverage E in the case of bailments contemplated by Exclusion (1), which provides, "under coverages . . . E, . . . and . . ., if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other incumbrance not specifically declared and described in this policy."

While not controlling in view of what has already been said in this opinion, we do not agree with the trial court's finding that the Financial Responsibility Act of Illinois is written into Standard's policy. There is no showing that the named insured has, by his previous conduct, brought himself within the purview of the Act. Absent such showing the provisions of the Act would not be incorporated in Condition 9. McCann for the Use of Osterman v. Continental Casualty Co., 6 Ill.App.2d 527, 128 N.E.2d 624.

We have concluded that in ordering that Standard protect Glover against Glawe in Glawe's suit for the use of Standard, the court erred. This was a loss excluded by Exclusion (f).

387

This action will leave in full force and effect a final judgment against Glover for the use of Standard for which judgment Standard had no right of action against Glover. However, under principles of common law subrogation, the payment by Standard (the party primarily liable by reason of the contract of insurance) would in fact constitute a satisfaction of the judgment in favor of Glawe for the use of Standard against Glover. Therefore, the trial court properly concluded that Standard cannot recover the sum of $599.23 from Glover and that Glover be released from Glawe's judgment against him. Grasse v. Dealers Transport Co., 412 Ill. 179, 106 N.E.2d 124; Geneva Const. Co. v. Martin Transfer & Storage Co., 4 Ill.2d 273, 122 N.E.2d 540.

■ We conclude that the order of the trial court appealed from reaches the proper conclusion, including the coercive relief decreed. Burgard v. Mascoutah Lumber Co., 6 Ill.App.2d 210, 127 N.E.2d 464, and should be affirmed.

The order of the Circuit Court of Winnebago County is affirmed.

Affirmed.

McNEAL, P. J. and DOVE, J., concur.