[No. 17596-3-I.   Division One.   December 14, 1987.]

FRONTIER FORD, INC., *Appellant,* v. JOHN CARABBA,
ET AL, *Respondents.*

*Michael L. Lewis* and *McIntosh, Lewis, Evans & Niel-sen,* for appellant.

*Donald J. Bisagna* and *Bisagna & Goddard,* for respondents.

RINGOLD, J.—This action was commenced by American States Insurance Company (American), the insurer of

Frontier Ford, Inc., a car dealership (Frontier), as a subrogation action in Frontier's name for reimbursement for the loss of an automobile driven by James Carabba while on a test drive. Carabba brought a third party action against his wife's insurer, Farmers Insurance Company (Farmers), and Farmers' agent claiming coverage as a family member under her policy. Farmers and Carabba filed motions for summary judgment. The trial court found Carabba was an insured under American/Frontier's policy, barring a subrogation action by American against its own insured. The court orally granted Carabba's motion for summary judgment and entered an order of dismissal. Frontier/American appeals.[1]

On January 19, 1983, John Carabba test–drove a 1980 BMW from Frontier Ford's lot in Anacortes. Insurance coverage was not discussed. With a salesman's permission, Carabba kept the car overnight. While driving the car to his home in Mt. Vernon, Carabba drove the car off the roadway, rendering it a total loss. There were allegations Carabba was intoxicated and fell asleep at the wheel. Under the collision section of Frontier's policy with American, Frontier was reimbursed for the loss.

The sole issue presented is whether Carabba is an insured under the collision policy issued by American to Frontier, thus barring the subrogation rights of American against Carabba. We answer "yes" and affirm.

American contends the trial court erred in finding Carabba was an insured under the collision/physical damage portion of its policy issued to Frontier, thus barring American's action.

The equitable doctrine of subrogation has been recognized in Washington and will be enforced only when justice

---

[1]It is not clear that the judgment before this court adjudicates the issue of Farmers' coverage. Farmers has not appealed, but contends "If in fact John Carabba was an insured under the Farmer's policy written to his wife Laura Carabba it was clear that it was intended only as an excess policy."

so requires. *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 9, 14, 665 P.2d 887 (1983).

The right of an insurer, which has paid a loss under its policy, to be subrogated to the rights of the insured (or the loss payee) against a wrongdoer responsible for the loss, is clear. However, subrogation is an equitable right and will be enforced or not according to the dictates of equity and good conscience.

*General Ins. Co. of Am. v. Stoddard Wendle Ford Motors,* 67 Wn.2d 973, 976, 410 P.2d 904 (1966); *see also Newcomer v. Masini,* 45 Wn. App. 284, 286, 724 P.2d 1122 (1986).

It is a general precept of insurance law that a subrogee's rights are derivative and dependent on the subrogor's rights. After it indemnifies its insured, an automobile collision insurer is entitled to subrogation against the tortfeasor legally responsible for the loss to the insured. 16 G. Couch, *Insurance* § 61:237 (2d ed. 1983).

An insurer, however, has no right of subrogation against its own insured. *Pendlebury v. Western Cas. & Sur. Co.,* 89 Idaho 456, 406 P.2d 129 (1965); *Dairyland Ins. Co. v. Munson,* 292 Minn. 141, 193 N.W.2d 476 (1972); *see General Ins. Co.,* at 979. Our Supreme Court has also declined to apply the doctrine in cases where the insurer attempted to recover from a party for whose benefit the insurance was acquired:

Cases in which an insurance company attempts to recover, as a subrogee, against a party for whose benefit the insurance was written and whose negligence has occasioned the loss, are concededly rare, but there are some (mostly in the field of builder's risk insurance). The courts have consistently held, in the builder's risk cases, that the insurance company—having paid a loss to one insured—cannot, as subrogee, recover from another of the parties for whose benefit the insurance was written even though his negligence may have occasioned the loss, there being no design or fraud on his part.

. . .

. . . [A]n insurance company, which has paid a claim and taken a subrogation, has no right of action against a co-insured of the subrogor . . .

"Co–insured," as therein used does not apply only to named insureds, but to all for whose benefit the insurance was written.

(Citations omitted.) *General Ins. Co.*, at 979. Resolution of the issue of whether American can proceed against Carabba, therefore, turns on whether he was an additional insured or a party for whose benefit the insurance was written under American's policy.

Liability coverage ordinarily protects the insured against loss and injury to others for which the insured might be liable resulting from use of the vehicles designated in the policy, while collision insurance provides protection against loss or injury to the vehicles described in the policy as a result of contact with another object. *See* 7 P. Kelly, *Blashfield on Automobiles* § 311.1 (3d rev. ed. 1987). A contract for collision insurance is one of indemnity. 10A G. Couch § 42:203. A collision insurer accepts a premium in return for which it agrees to pay collision losses without regard to fault. *Western States Mut. Ins. Co. v. Standard Mut. Ins. Co.*, 26 Ill. App. 2d 378, 167 N.E.2d 833, 837 (1960). The general purpose of collision coverage is to protect the owner, and anyone who has a security interest as a creditor in the vehicle, against loss resulting from physical damage to the vehicle. *Continental Cas. Co. v. Ottis*, 271 So. 2d 592, 595 (La. Ct. App. 1972).

In the case sub judice, Frontier's policy with American provides in pertinent part:

GARAGE POLICY
PART I. WORDS AND PHRASES WITH SPECIAL MEANING
. . . The following words and phrases have special meaning throughout this policy and appear in boldface type when used:
A. "**You**" and "**your**" mean the person or organization shown as the named insured in Item One of the declarations.[2]
. . .

---

[2]The named insured in Item One is: "Gordon F. Flannigan, Ind. & Frontier Ford, Inc."

G. "**Insured**" means any person . . . qualifying as an insured in the Who Is Insured section of the applicable insurance. . . .

. . .

PART II. WHICH AUTOS ARE COVERED AUTOS
A. Item Two of the declarations shows the **autos** which are covered autos for each of **your** coverages. The numerical symbols explained in Item Three of the declarations describe which **autos** are covered **autos**.[3]

. . .

PART IV. LIABILITY INSURANCE
D. WHO IS AN INSURED.
  1. For Covered Autos.
    a. **You** are **insured** for any covered **auto**.
    b. Anyone else is an **insured** while using with **your** permission a covered **auto** except:

    . . .

    (3) **Your** customers, if **your** business is shown in Item One of the declarations as an **auto** dealership. However, if a customer of **yours**:
    (a) Has no other available insurance (whether primary, excess, or contingent), he or she is an **insured** but only up to the compulsory or financial responsibility law limits. . . .

. . .

PART VI. PHYSICAL DAMAGE INSURANCE
A. WE WILL PAY.
We will pay for loss to a covered auto or its equipment, under:

. . .

  3. Collision Coverage. Caused by the covered auto's collision with another object or its overturn.
PART VII. CONDITIONS
The insurance provided by this policy is subject to the following conditions:
  A. YOUR DUTIES AFTER ACCIDENT OR LOSS
    1. . . .

---

[3]Item Two states that for collision coverage under Physical Damage Insurance covered autos are code "31", explained in Item Three to be "**Dealers**' autos. . . . Any **autos** and the interests in these **autos** described in **Item Eight**. . . ." Item Eight under collision coverage appears to cover all autos including new, used and demonstrator autos.

2. Additionally, you and other involved insureds must:
a. Cooperate with us in the investigation, settlement or defense of any claim of suit.

I. NO BENEFIT TO BAILEE—PHYSICAL DAMAGE INSURANCE ONLY. We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing, or transporting property for a fee regardless of any other provision of this policy.

All parties concede that Carabba, as a permissive user of a covered auto, would have been an insured under the liability section of the policy if the accident had resulted in loss or injury to third parties.

Part 1 of the policy states that a definition of insured is given in the "Who Is Insured" section of each applicable provision. Under Part 6—Physical Damage Insurance and the collision coverage provisions, American's policy refers only to "covered autos", not to insured; all vehicles held out for sale are covered autos under the policy.

American contends that there is no "Who Is An Insured" section in the physical damage/collision portion of the policy because collision coverage pertains to automobiles, not persons, and that the beneficiary of such coverage is solely the named insured, Frontier Ford. American relies on *Continental Cas. Co. v. Ottis*, 271 So. 2d 592 (La. Ct. App. 1972) in which, like the present case, the physical damage section of the policy did not contain a definition of an insured. The *Ottis* court referred to the main definition section, in which the named insured was defined as the dealership, and held the permittee was not an insured.

The opposite result was reached in *Western States Mut. Ins. Co. v. Standard Mut. Ins. Co.*, 26 Ill. App. 2d 378, 167 N.E.2d 833 (1960), in which the court held that the permissive user of the car was an additional insured under the policy's collision coverage and the insurer therefore had no right of subrogation. The court based its conclusion on the fact that a paragraph in the policy, similar to a paragraph in American's policy, required "the insured", including a

permissive user, to do whatever is necessary to secure the subrogation rights of the insurance company. The court found such a requirement to be "reasonable so long as the recovery is sought from a third person not an insured under the terms of the policy." *Western States,* at 386.

*Auto Driveaway Co. v. Aetna Cas. & Sur. Co.,* 19 Ariz. App. 224, 506 P.2d 264 (1973) is distinguishable from the case sub judice because the Arizona court found that a specific exclusion under the policy's collision coverage applied to deny a permissive user the status of an additional insured. The Arizona court, in considering the *Western States* case, explained that the persons insured appeared to be the same under both the liability and collision sections. *Auto Driveaway* also distinguished the policy before it, which had separate provisions for those insured under each section, and noted that the collision section specifically excluded bailees for hire from coverage. Similarly, in *Dairyland Ins. Co. v. Munson,* 292 Minn. 141, 193 N.W.2d 476 (1972), the court denied coverage to a permittee due to a specific provision in the collision section of the policy that excluded benefits to bailees. *Accord, Aviation Employees Ins. Co. v. Barclay,* 237 Md. 318, 206 A.2d 119 (1965) (pilot, bailee of an aircraft under policy that specifically stated its collision coverage should not inure to the benefit of bailees, not an insured); 10A G. Couch § 42:223.

Section 7 of the American policy contains a limited "no benefit to bailee" clause which applies to the physical damage section only. That clause excludes benefits to "any person or organization holding, storing, or transporting property for a fee", *i.e.,* a bailee for hire. Carabba had entered into a mutually beneficial bailment with Frontier and was not a bailee for hire; therefore the exclusion does not apply and he is an insured under the policy.

Customers are also covered by the American policy:

Your customers, if your business is shown in Item One of the declarations as an auto dealership. However, if a customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

Part 4(D)(1)(b)(3). Although "customer" is not defined in the policy, we conclude that Carabba was a customer of Frontier. A customer is "one that purchases some commodity or service: one that purchases systematically or frequently". *Webster's Third New International Dictionary* 559 (1966). The meaning of the words of an insurance policy must be as viewed by ordinary persons. *Truck Ins. Exch. v. Aetna Cas. & Sur. Co.*, 13 Wn. App. 775, 778, 538 P.2d 529 (1975). If ambiguous, the policy must be construed against the insurer. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). Considering modern business practices, we take judicial notice of the fact that a potential purchaser such as Carabba was a customer, and, therefore, an insured under part 4 of the American policy.

We hold that Carabba is an additional insured under several provisions of the policy. We construe the collision provisions to cover autos regardless of who is driving and conclude that Carabba was an intended beneficiary of the collision insurance. *General Ins. Co.*, at 979. Under the liability sections of the policy, we find that Carabba, as a permittee, is an additional insured. Further, a person who borrows an automobile from a dealer for test–driving is a potential purchaser and, therefore, is covered as a customer. Because the physical damage section specifically excludes bailees for hire from coverage, bailees not for hire, such as permissive users, are included as insureds. Carabba

was a permissive user and an additional insured/intended beneficiary of the policy. American cannot, therefore, maintain a subrogation action against him.

The judgment of dismissal is affirmed.

WILLIAMS, J., concurs.
SCHOLFIELD, C.J., concurs in the result.