(845 P.2d 74)

No. 67,630

AMERICAN STATES INSURANCE COMPANY, *Appellant,* v. MATTHEW
McCANN, by and through his Coconservators, PATRICK E.
McCANN and WANDA M. McCANN; ROPER PONTIAC, INC.;
JAMES W. DEAN; REGINA M. GAISER, f/k/a REGINA M. WEST-
COTT; PATRICK E. McCANN; WANDA M. McCANN; and WEST
GENERAL INSURANCE COMPANY, INC., A Kansas Corporation,
*Appellees.*

Opinion filed January 15, 1993.

*Mark A. Werner,* of White, O'Connor & Werner, P.A., of Pittsburg, and
*Gordon N. Myerson* and *Gary J. Willnauer,* of Myerson, Monsees & Mor-
row, A Professional Corporation, of Kansas City, Missouri, for appellant.

*Fred Spigarelli* and *Pamela G. Phalen,* of Pittsburg, for appellee Matthew
McCann.

*Bill Wachter,* of Wilbert & Towner, P.A., of Pittsburg, for appellee West
General Insurance Company, Inc.

*Bryson R. Cloon,* of Cloon, Bennett, Ronan & Viveros, of Overland Park,
for appellee Regina M. Gaiser, f/k/a Regina M. Westcott.

Before BRISCOE, C.J., GERNON, J., and RICHARD A. MEDLEY, District Judge, assigned.

GERNON, J.: American States Insurance Company (American States) appeals the district court's ruling which interpreted and applied an insurance policy American States had issued to Roper Pontiac, Inc. The district court found that American States was liable as the primary insurer for an accident involving one of Roper Pontiac's vehicles. We reverse.

American States filed a declaratory judgment action asking the court to determine its rights and responsibilities with regard to an automobile collision involving Matthew McCann, Regina Westcott Gaiser, and James W. Dean. McCann was shopping for a new automobile. He went to Roper Pontiac in Joplin, Missouri, and signed a purchase agreement for a new 1988 Pontiac Grand Prix. McCann was allowed to leave the dealership driving the new car. He left behind his 1985 automobile, which was to be traded in, and explained that he was going to obtain financing through his own bank in Fort Scott, Kansas. All the above business dealings took place on a Saturday.

The following Monday, McCann contacted the dealership and informed a salesman that he was unable to obtain financing for the Grand Prix. The salesman and McCann agreed that McCann would return the Grand Prix to Roper Pontiac on Tuesday, October 18, 1988.

On Monday evening, October 17, 1988, McCann and James W. Dean drove the Grand Prix to a tavern in Pittsburg, Kansas. McCann and Dean drank several drinks at the tavern and made the acquaintenance of Regina Westcott Gaiser. When the tavern closed, McCann asked Gaiser to accompany him back to Fort Scott, and she agreed. McCann, Dean, and Gaiser left the tavern in the Grand Prix. McCann was driving. At approximately 3:00 a.m. on October 18, 1988, the Grand Prix was involved in a single-car accident in Bourbon County, Kansas. As a result of the accident, Gaiser and Dean sustained personal injuries. They brought suit against McCann.

McCann suffered serious brain damage and, at all times since the accident, has been incapable of testifying or providing any information concerning the events leading up to the accident.

McCann's mother and father have been appointed as coconservators for McCann.

At the time of the accident, McCann had automobile liability insurance with West General Insurance Company. West General denied liability for the accident and refused to provide McCann a defense against the actions brought by Dean and Gaiser.

American States had issued a commercial general liability and garage coverage policy to Roper Pontiac. American States undertook McCann's defense for all claims by all parties as a result of the accident, subject to a reservation of its rights.

In May 1989, American States filed a declaratory judgment action asking the court to determine whether the policy issued to Roper Pontiac provided liability coverage to McCann and, if so, in what amount.

Following American States' motion for summary judgment, the district court issued a memorandum decision. It denied the motion for summary judgment and concluded that the American States' policy issued to Roper Pontiac provided liability coverage to McCann in the amount of $1,000,000 and that West General would be responsible for any excess. American States appeals this decision.

The first issue to be resolved is whether McCann was covered under Roper Pontiac's policy with American States. In Section II of the policy, which described liability coverage, the policy defined an insured.

"WHO IS AN INSURED

"a. The following are 'insureds' for covered 'autos:'

(1) You for any covered 'auto.'

(2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

(a) The owner or anyone else from whom you hire or borrow a covered 'auto.' This exception does not apply it [sic] the covered 'auto' is a 'trailer' connected to a covered 'auto' you own.

(b) Your employee if the covered 'auto' is owned by that employee or a member of his or her household.

(c) Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is your 'garage operations.'

(d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance."

The parties do not dispute that the 1988 Grand Prix was a covered auto under the policy.

The above section specifically excludes "customers" from coverage unless they have no other available insurance or the insurance they do have is less than what the law of the state where the covered auto is principally garaged requires. American States maintains that McCann was a "customer" and, thus, it is liable only for the minimum statutory amount of coverage.

McCann and other defendants argue that, while McCann was a permissive user of the car, he was not a customer because no actual sales transaction took place. The trial court agreed with McCann's argument, finding that the term "customer" was ambiguous and that the coverage limitation on customers conflicted with the out-of-state extension. "Customer" is not defined within the policy itself.

Simply put, if McCann was a customer, American States' liability was limited pursuant to Section II 1.a.(2)(d). The district court stated that, "if such an exclusion is effective, coverage would be so restricted as to call into question the viability of the policy in terms of liability coverage." The district court found that the language of the exclusion did not meet the legal requirement of being clear and concise as required under *Citizens Ins. Co. of N.J. v. Kan. City, Etc.*, 611 S.W.2d 302, 307 (Mo. App. 1980).

In interpreting such a contract, we must determine under which state's law the contract will be governed. In *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 642, 685 P.2d 321 (1984), this court ruled that, under Kansas law, the choice of which state's law is applicable to the construction of a contract depends on where the contract is made. Here, Roper Pontiac's principal place of business was Joplin, Missouri, and its insurance contract with American States was issued to Roper Pontiac in

Missouri. Therefore, Missouri law is applicable to the construction and interpretation of the American States insurance policy.

"Because insurance policies are contracts, the rules applicable to the construction of contracts are applicable to insurance policies." *Auto. Club Inter-Ins. v. Farmers Ins.,* 778 S.W.2d 772, 774 (Mo. App. 1989). "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Krombach v. Mayflower Ins. Co., Ltd.,* 785 S.W.2d 728, 731 (Mo. App. 1990). "Ambiguity arises only if the language is susceptible of two interpretations and its meaning is uncertain." *Herpel v. Farmers Ins. Co., Inc.,* 795 S.W.2d 508, 510 (Mo. App. 1990). "Ambiguity arises in an insurance policy when it contains duplicity, indistinctness, or uncertainty of meaning." *Auto. Club Inter-Ins.,* 778 S.W.2d at 774.

In addition, the district court found that the provision detailing who was an insured under the policy conflicted with a subsequent clause entitled "Out of State Coverage Extensions."

"2. COVERAGE EXTENSIONS
. . . .
"b. Out of State Coverage Extensions
While a covered 'auto' is away from the state where it is licensed we will:
(1) Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered 'auto' is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.
(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out of state vehicles by the jurisdiction where the covered 'auto' is being used.
"We will not pay anyone more than once for the same elements of loss because of these extensions."

The court concluded that the language from the coverage extension clause "appears to directly conflict" with the language describing who was insured under the policy. The court concluded that, when construed together, the clauses created an ambiguity, and that coverage would be afforded because any ambiguity must be resolved in favor of the insured. Moreover, because the out-of-state extension clause did not restrict coverage

to minimum statutory requirements, the district court found that McCann and the other defendants were entitled to the maximum liability limit of $1,000,000.

The primary question to be resolved is whether McCann was a "customer" at the time of the accident. The district court concluded that McCann was not a customer because, at the time of the accident, McCann could not qualify for financing; therefore, since he was unable to buy the car and since no sale was taking place or would take place, he could not be considered a customer. We disagree.

"Customer" is not defined by American States within the policy, so we must interpret the term according to its generally understood meaning. Black's Law Dictionary defines "customer" as "[o]ne who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business." Black's Law Dictionary 386 (6th ed. 1990). "Customer" is also defined as "one who purchases systematically or frequently." Webster's Third New International Dictionary 559 (unabridged ed. 1986).

Case law from other jurisdictions does not indicate a clear pattern as to interpretation of the term "customer" in the context of a garage insurance policy. In *Weger v. Lawrence*, 575 N.E.2d 659 (Ind. App. 1991), the court, in a footnote, stated: "We could envision this language providing coverage . . . when a customer with no insurance is involved in an accident while test-driving a dealer's car." 575 N.E.2d at 662 n.2. While this language may be dicta, it clearly indicates that the Indiana court concluded that the term "customer" could be interpreted to not require an actual sales transaction or purchase.

In *State Farm Mut. Auto. Ins. Co. v. Burgin*, 752 F. Supp. 877 (W.D. Ark. 1990), the court was faced with a nearly identical provision to that in the present case. A car dealership loaned a vehicle to two business partners for them to drive to a different state, and one of the partners was involved in a car accident with the loaned vehicle. One of the partners had purchased a vehicle from this dealership several years earlier, and there was some evidence that the same partner had expressed interest in buying a new car from the dealership, although no order had been received or a contract signed. The court ruled that a possible future customer was not truly a "customer" under the policy. However,

the facts in *State Farm* stop well short of the facts in the present case, where a purchase agreement was in fact signed.

In *Frontier Ford v. Carabba,* 50 Wash. App. 210, 747 P.2d 1099 (1987), John Carabba test-drove a used BMW from Frontier Ford and, with the salesman's permission, planned to keep the car overnight. On his way home, Carabba drove the car off the road. The sole issue on appeal was whether Carabba was an insured under the policy issued by American States Insurance Company to Frontier Ford, thus barring the subrogation rights of American States against Carabba. The court ruled that, "[a]lthough 'customer' is not defined in the policy, we conclude that Carabba was a customer of Frontier." 50 Wash. App. at 217. The court stated: "Considering modern business practices, we take judicial notice of the fact that a potential purchaser such as Carabba was a customer, and, therefore, an insured." 50 Wash. App. at 217. The court expressly held that "a person who borrows an automobile from a dealer for test-driving is a potential purchaser and, therefore, is covered as a customer." 50 Wash. App. at 217.

American States argues that McCann went to Roper Pontiac intending to buy a car. He signed a purchase agreement, and the only question which remained was the financing. Interpreting "customer" to require an actual purchase would appear to preclude coverage for persons test-driving vehicles. Moreover, interpreting "customer" in this manner would seem to defeat the whole purpose of the exclusion, for once an individual purchased a vehicle, the car would no longer be owned by Roper Pontiac or covered by its policy. "[A]n interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected." *Jim Carlson Const., Inc. v. Bailey,* 769 S.W.2d 480, 482 (Mo. App. 1989).

Moreover, there is some suggestion in the record that financing had been approved for McCann to purchase a less expensive automobile he had been looking at while at Roper Pontiac. Thus, although he could not buy the Grand Prix, negotiations were ongoing at the time of the accident to purchase another vehicle. Also, it would not be unreasonable for Roper Pontiac to have viewed McCann as a "customer," since he had entered into se-

rious negotiations for the purchase of a specific automobile and he had signed a purchase agreement. If McCann was not a customer under any common-sense usage of the term, we do not know what he might have been.

We conclude that McCann was a customer under the plain, ordinary meaning of that word and the facts presented in this case. Therefore, McCann falls within the scope of the exclusion, and he is limited to the minimum statutory amount of liability pursuant to the policy. American States should, therefore, be responsible for the amount of liability required in Kansas if this amount is more than is required in Missouri. Both Kansas and Missouri require $25,000 per person/$50,000 per accident.

While the district court found that the out-of-state coverage extension conflicted with the customer exclusion, when read as a whole, the out-of-state extension is only relevant where an accident involving a covered automobile occurs outside Missouri and the driver is subject to the minimum statutory liability. The policy simply recognizes that not all states have a required minimum limit of insurance, and if the covered auto is driven in any other state, the Missouri policy will automatically be increased to meet the statutory requirement of that particular state. The out-of-state extension does not mention decreasing liability coverage or limiting coverage to the statutory minimum; it only refers to increasing coverage to match a particular state's amount.

American States also argues that McCann was not an insured at the time of the accident because he was outside the scope of permission granted to him by Roper Pontiac. We note that this issue was not directly raised by American States below. The nature of McCann's use of the automobile was briefly addressed at oral argument on a motion for summary judgment in a different context; that is, whether West General should be liable for primary coverage because McCann used the automobile for personal use. American States admits that the scope of permission granted to McCann was not fully developed or addressed and that the scope of permission was not the focus of the declaratory judgment hearing.

"A point not raised before or presented to the trial court cannot be raised for the first time on appeal." *Diversified Financial*

*Planners, Inc. v. Maderak,* 248 Kan. 946, 948, 811 P.2d 1237 (1991).

The issue of whether McCann exceeded the scope of his permission to use the automobile is a factual question and does not come within any of the exceptions under our rules of appellate practice and, therefore, will not be considered on appeal.

The decision of the district court is reversed based upon our finding that the term "customer" is unambiguous and plainly applies to the facts in this case.

Reversed.