Laurie H. WINN, Administratrix of Estate of Elbert J. Winn, Jr., et al.
v.
Roland BECKER and Universal Underwriters Insurance Company
v.
Liberty Mutual Insurance Company and Brian Pello, Individually & d/b/a/Classic Auto Sales

[660 A.2d 284]

No. 94-167

March 21, 1995. Universal Underwriters Insurance appeals from a trial court order granting summary judgment to Liberty Mutual Insurance Company, the insurer of an automobile dealer that sold a vehicle involved in a fatal accident. We affirm.

The principal facts are not in dispute. The decedent, Elbert Winn, was operating a motor vehicle within the scope of his employment when his vehicle was struck by a G.M.C. Jimmy operated by Roland Becker. Winn died as a result of the injuries he suffered in the accident. Becker had purchased the Jimmy from Brian Pello d/b/a Classic Auto Sales (Classic) on the morning of the accident. Classic had acquired the vehicle some weeks earlier from Barry Townsend.

On the morning of the accident, Becker arrived at Classic to accept delivery of the Jimmy. He paid the agreed purchase price and took possession of the vehicle. Pello signed the title certificate and delivered it to Becker. Becker intended to have some repairs made to the vehicle and did not intend to register it until the repairs had been completed. Pello placed a dealer plate on the vehicle so Becker could drive the vehicle off Classic's premises. Townsend had not signed the assignment-of-title portion of the title certificate because it was in the possession of his financing bank at the time of the transfer to Classic. At Pello's suggestion, Becker intended to stop at Townsend's house to obtain his signature on the title certificate before traveling to a repair garage. The accident occurred before Becker arrived at the Townsend residence.

Decedent's administratrix filed a wrongful death action against Becker, whose insurance liability limit was $20,000, the minimum limit for one person under the financial responsibility law. 23 V.S.A. § 801(a). She also sued Universal, the insurance carrier for decedent's employer, seeking to enforce the underinsured motorist provisions of its policy. Universal filed a third-party claim against Classic, which was insured by Liberty Mutual, on the theory that a defect in the Jimmy was the cause of the accident. Liberty Mutual has assumed the defense of this claim. Universal also filed a third-party claim against Liberty Mutual, alleging that Becker, in addition to Classic, was insured under the Liberty Mutual insurance policy issued to Classic.

The parties filed cross-motions for summary judgment on Universal's claim that Becker was separately covered under the Classic insurance policy. The trial court granted Liberty Mutual's motion, concluding that the Liberty Mutual policy

did not cover Becker because he was a "customer" of Classic and was excluded from coverage under the terms of the policy. This appeal followed.

Libery Mutual's insurance policy issued to Classic includes separate provisions relating to claims involving both covered and noncovered vehicles. The provision relating to covered vehicles states:

## D. WHO IS AN INSURED

1. For Covered Autos

. . . .

b. Anyone else is an insured while using with your permission a covered auto except:

. . . .

(3) Your customers, if your business is shown in ITEM 1 of the declarations as an auto dealership. However, if a customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.

The sole issue on appeal is whether Roland Becker was a customer of Classic and therefore excluded from coverage under the policy language as a matter of law.

Clearly, Becker was a customer within the plain meaning of the policy provision relating to covered vehicles as a matter of law. Universal does not deny that Becker's primary relationship to Classic — the reason he was driving the vehicle involved in the accident — was that of a purchaser from Classic of the vehicle. Universal's argument is that until title passed to Becker, he was not a customer within the meaning of the policy.

Although Universal examines the question of title in detail, it never explains why the title issue is relevant to whether Becker was a "customer" of Classic, other than to point out that the court first examined "who owned the Jimmy at the time of the accident" as a "preliminary question to be decided." We hold that Becker's status as a customer of Classic did not depend on who owned the vehicle at the moment the accident occurred. He became a customer, not when he took title to the purchased item, but when he was first "a potential purchaser of a commodity." *Farm Bureau Ins. Co. v. Select Ins. Co.*, 762 F. Supp. 895, 899 (D. Kan. 1991) (dealership employee was also potential purchaser of vehicle and hence a "customer"); *American States Ins. Co. v. McCann*, 845 P.2d 74, 78 (Kan. Ct. App. 1993) ("[I]interpreting 'customer' [to require an actual purchase] would seem to defeat the whole purpose of the exclusion"); *Frontier Ford, Inc. v. Carabba*, 747 P.2d 1099, 1103 (Wash. Ct. App. 1987) (potential purchaser of car involved in accident during test drive was "customer"); cf. *State Farm Mut. Auto. Ins. Co. v. Burgin*, 752 F. Supp. 877, 881 (W.D. Ark. 1990) (businessman who was loaned car by dealership to drive out of state was not

customer, where there was no clear evidence of interest in purchasing the car loaned).*

The cases cited by Universal, whose outcomes are determined by the moment of title transfer, have no relevance on the issue of whether a vendor-customer relationship exists. *United States Fidelity & Guar. Corp. v. Myers Motors, Inc.*, 143 F. Supp. 96, 98 (W.D. Va. 1956) (where seller had not transferred certificate of title, policy insuring seller against claims arising out of ownership applied); *Fireman's Fund Ins. Cos. v. Blais*, 438 N.E.2d 360, 363 (Mass. App. Ct. 1982) (insured, who agreed to sell car to his employee, had not transferred title and was still within policy coverage).

Even if title were to play some role in whether Becker was a "customer" of Classic, it is clear that title had passed to Becker before the accident occurred. Universal argues that the issue is governed by Vermont's Uniform Motor Vehicle Certificate of Title and Anti-Theft Act, 23 V.S.A. §§ 2001-2095. Even under this statute, however, Classic had no legal or equitable claim to the vehicle sold to Becker. Classic accepted the purchase price, delivered the vehicle, signed the title certificate, and delivered the title certificate executed by Pello to Becker. Consequently, as between Becker and Classic, Becker owned the vehicle. 23 V.S.A. § 2023(d) (when owner delivers possession and application for certificate of title is made, interest in vehicle is transferred).

Universal argues that because the prior owner, Townsend, had not executed *his* certificate of title at the time of Classic's transfer to Becker, § 2023(d) did not apply to the subsequent transaction between Classic and Becker. But with or without the Townsend certificate in hand, Classic was the owner of the vehicle when it sold the vehicle to Becker. Clearly, § 2023(d) did apply.

Finally, Universal argues that because Becker was performing an errand for Classic — i.e., obtaining a prior owner's signature on a title certificate and delivering the vehicle to a garage — he was then a "servant," rather than a "customer." The argument for Becker's servant status is farfetched. See *Stevens v. Nurenburg*, 117 Vt. 525, 528, 97 A.2d 250, 253 (1953) ("If both parties understand that the rendition of the service is merely a courtesy extended by one to the other, without intent to create the relationship of master and servant, then the relationship does not exist.").

In sum, the provisions of the policy must be taken "in their plain, ordinary and popular sense." *Medlar v. Aetna Ins. Co.*, 127 Vt. 337, 344, 248 A.2d 740, 745-46 (1968). Becker was a customer of Classic, and the trial court properly granted Liberty Mutual's summary judgment motion. V.R.C.P. 56(c).

*Affirmed.*

---

* We reject in this context the notion that, to be a customer, more than a single exchange is implied. See *Matthews v. Konieczny*, 527 A.2d 508, 513 (Pa. 1987) (in context of dram shop act, "customer" connotes capacity to engage in regular transactions).