**CONCORD GENERAL MUTUAL INSURANCE COMPANY v. Floyd SUMNER**

[762 A.2d 849]

No. 99-450

October 16, 2000. This dispute between two insurance companies turns on which of two vehicle dealers — Automaster Motor Co., which is insured by defendant Acadia Insurance Company, or Carey's

Auto Sales, which is insured by plaintiff Concord General Mutual Insurance Company — owned a certain Honda automobile when it was in an accident in which an employee of Carey's was injured. The trial court ruled that the vehicle was owned by Carey's and, thus, that Concord was obligated to cover the damages from the injuries to the employee. We affirm.

Automaster purchased the Honda vehicle from a private owner and sold it to Carey's. Carey's employee went to Automaster, provided a check for payment for the vehicle, put Carey's dealer's plates on it and drove it away. Although it apparently had the certificate of title at the time possession of the vehicle was taken by Carey's employee, Automaster did not assign it to Carey's until days later. The accident occurred while the employee was driving the vehicle back to Carey's lot.

Although Concord's argument depends on the intricacies of the Vermont Motor Vehicle Certificate of Title and Anti-Theft Act, 23 V.S.A. §§ 2001-2095, its position is that title did not pass until either Automaster assigned the title certificate to Carey's or sent it to the Commissioner of Motor Vehicles so a new certificate of title could be issued to Carey's. Acadia responds, in essence, that certificates of title are not issued to dealers and dealers always have 10 days after a sale to pass the certificate of title.

At the outset, we stress that all answers to ownership questions will not inevitably be found in the Certificate of Title Act. Concord argues that we so held in *Stearns v. Dairyland Insurance Co.*, 154 Vt. 126, 573 A.2d 692 (1990). See also *Winn v. Becker*, 163 Vt. 615, 660 A.2d 284 (1995) (mem.). In both *Stearns* and *Winn*, the appellant argued that violations of the Certificate of Title Act meant that ownership remained in the dealer, even after a purchaser had taken possession of the vehicle and paid for it, so that the dealer's insurance carrier was responsible for personal injuries caused by the purchaser's use of the vehicle. In each case, we found that the Act did not support the argument, and in each we looked beyond the Act in doing so. In *Stearns*, for example, we found a technical violation of 23 V.S.A. § 2026 to be irrelevant to the ownership question because the purchaser did not intend to register the vehicle for a time and the registration law did not require a title certificate until registration occurred. *Stearns*, 154 Vt. at 128, 573 A.2d at 693.

The Certificate of Title Act was enacted to prevent theft and protect creditors with a security interest in a vehicle, not to determine ownership claims underlying insurance coverage disputes. See, e.g., *Semple v. State Farm Mut. Auto. Ins. Co.*, 215 F. Supp. 645, 646-47 (E.D. Pa. 1963). It is foreseeable, therefore, that it will not provide answers to such ownership claims in many cases. We find that to be true here.

We agree with Acadia that a dealer need not obtain a certificate of title for a vehicle it holds for sale, whether new or used. See 23 V.S.A. § 2012(2). Probably because no new certificate of title will issue in a sale between dealers, none of the Act's many sections, as cited by the parties, apply explicitly and directly to a sale between dealers. We decline, for example, to apply the detailed provisions of 23 V.S.A. §§ 2023 and 2024 because we conclude these sections apply to sales in which at least one party is a nondealer owner. Our overall goal in statutory construction is to implement the intent of the Legislature. See *Brennan v. Town of Colchester*, 169 Vt. 175, 177, 730 A.2d 601, 603 (1999). We conclude that the Legislature did not intend that the Certificate of Title Act impose specific requirements on dealer-to-dealer transfers to determine whether title passed.

Acadia argues, in contrast, that the governing rule for this case can be found in the Uniform Commercial Code § 2-

401(2), 9A V.S.A. § 2-401(2), which provides:

> (2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . . .

Concord responds that the general provision of the U.C.C. is superseded as to motor vehicles by the specific provisions of the Certificate of Title Act, an argument that is necessarily rejected by our holding above that there are no specific provisions in the Act which govern this case.

We also reject Concord's further argument that the governing U.C.C. section is 2-401(3), not 2-401(2) because no movement of goods was involved in delivery. Subsection (3) provides that "where delivery is to be made without moving the goods" and "the seller is to deliver a document of title," then title passes when the document is delivered. 9A V.S.A. § 2-401(3). Courts that have based ownership on application of § 2-401(3) have done so where the buyer already had possession of the vehicle prior to the sale and there was no movement of goods. See, e.g., *Fireman's Fund Ins. Cos. v. Blais*, 438 N.E.2d 360, 363 (Mass. App. Ct. 1982); *Grange Mut. Cas. Co. v. Smith*, 609 N.E.2d 585, 588 (Ohio Ct. App. 1992). In essence, Concord argues that § 2-401(3) applies whenever delivery is made at the seller's place of business because the seller will not move the goods to make delivery. Assuming, arguendo, that a motor vehicle certificate of title qualifies as a "document of title" under § 1-201(15), we disagree with Concord's broad reading of

§ 2-401(3). As the official comment states, "[t]he factual situations in subsections (2) and (3) upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods." 9A V.S.A. § 2-401 cmt. 4. Here Automaster identified the specific vehicle involved and delivered possession to Carey's employee who moved it off the lot. See 9A V.S.A. § 2-308 (unless otherwise agreed, place of delivery is seller's place of business).

Other states have faced this same issue and have decided that application of § 2-401(2) is the better course. See *Dairylea Co-op, Inc. v. Rossal*, 473 N.E.2d 251, 256-57 (N.Y. 1984) (choosing to apply U.C.C. § 2-401(2) instead of § 2-401(3) because § 2-401(3) applies only where goods remain in seller's possession); *Smith v. Nationwide Mut. Ins. Co.*, 524 N.E.2d 507, 508-09 (Ohio 1988) (choosing to apply U.C.C. § 2-401(2) over state motor vehicle title act). Furthermore, according to § 2-401(1), the only interest Automaster could retain in the Honda after delivery to Carey's employee was limited to a security interest. See *Heinrich v. Titus-Will Sales, Inc.*, 868 P.2d 169, 177 n.7 (Wash. Ct. App. 1994) (interpreting U.C.C. § 2-401(1) to limit seller's rights to a security interest even where parties explicitly contract that seller will retain title to goods delivered to buyer). We hold that § 2-401(2) applies.

We agree with Acadia that the plain meaning of U.C.C. § 2-401(2) covers this case and provides that title passed when Carey's employee paid for the vehicle and took possession of it, irrespective of when the certificate of title was actually assigned to Carey's. Because Carey's was the owner of the vehicle when the accident occurred, the superior court correctly ruled that Concord was responsible to cover the damages incurred by Carey's employee.

*Affirmed.*